No. 2590.—M. HEBERT et al. *v.* JOHN CHASTANT.

Service of executory process on the mortgaged debtor interrupts prescription, whether he makes defense or not.

The holder of promissory notes executed for the purchase price of a plantation and slaves before emancipation, can only recover that portion which is ascertained to be for the value of the land at the time of the sale. In case the purchaser has paid a portion of the price, the holder can recover that portion of the balance due which is ascertained to be for the land in the proportion of the value of the land and slaves in the original contract. The doctrine in the case of Sandidge v. Sanderson, 21 An. 757 reaffirmed.

APPEAL from Seventh District Court, parish of Pointe Coupée. *Miller,* J. *Rousseau & Estevan,* for plaintiff and appellee. *Thomas H. Hewes,* for defendant and appellant.

WYLY, J. In March, 1860, the defendant, John Chastant, purchased in the parish of Pointe Coupée a sugar plantation, together with the slaves and movables thereon, for the price of $200,000, paying $50,000 cash, and executing, in evidence of the deferred installments, the series of mortgage notes on which this action is based.

The defendant enjoined the executory proceedings of plaintiffs on several grounds. The most prominent are the prescription of five years, and the slave consideration of the notes.

The court below maintained the plea of prescription as to the notes maturing on or prior to twenty-second of March, 1862, and rendered judgment for half the amount of the remaining notes, that part of the consideration appearing not to be for slaves. The defendant appealed.

He now contends that the notice of the order of seizure and sale served on him personally, on thirteenth May, 1867, did not interrupt the prescription of the notes maturing in March, 1863, because the plaintiff did not cause the sale to be made as advertised on sixth July, 1867, but voluntarily returned the writ, and did not issue it again until

twenty-first September, 1868; that proceedings by order of seizure and sale only arrest prescription when they are litigated, and in support of this position he relies on Walker & Co. v. Lee, 20 An. 192. The authority referred to does not sustain the position. That judgment was based on no such reason.

If prescription has not been arrested by some act of the defendant, or some process of the court, within a limited time, the law presumes the debt has been paid. It is a statute of repose, based upon the presumption of payment, where the creditor has failed to assert his rights in the time limited for him to do so. When the service of the executory process was made on the defendant, on thirteenth May, 1867, he became a party to a judicial proceeding against him for the recovery of the debt, whether he saw fit to litigate it or not. The law would hardly presume a creditor paid, who made his debtor a party to a judicial proceeding, and actually had his property under seizure and advertised for sale, within the period limited for prescription to accrue.

The debt evidenced by the notes was part for slaves, and part for lands and movables; and under the decisions of Soniat v. Patrick and Sandidge v. Sanderson, lately rendered, it must be apportioned, and judgment given only for that part of the debt, the consideration whereof was not slaves.

The parties do not question the correctness of these decisions, and are perfectly willing for the apportionment, but differ as to the relative value of the slaves, and land and movables. This is rather a question of fact than of law. The opinion of numerous witnesses was taken as to what was the relative value of these different objects of the contract of sale at the time it occurred. On this subject they differed widely.

Randolph, a witness, said: "The property on the day of sale, as it stood, with all the appurtenances, without the slaves, was worth, in my opinion, not more than $40,000. The place would not be worth more than $25,000 at present. I would not have given more than $5000 for the place in 1863."

Hubert, another witness, thought the land, since 1860, was worth about $39,500, and the slaves were then worth about $1000 apiece.

The witness Bouanchaud, who was assessor, swears: "That very place was appraised by me in 1859 at about $80,000. In 1858 it was valued at about $40,000; but from that time the planters valued their lands at forty dollars an acre up to the war."

On thirteenth February, 1860, just thirty-seven days before the sale, all the property was inventoried and appraised by order of the court (it being succession property), each piece of property being appraised separately, and the aggregate cash value fixed by the appraisers was $170,716; of this, their valuation of the land and movables was $86,516, and that of the slaves $84,200.

20

L. V. Gasseraud, one of the appraisers at the taking of the inventory, was sworn as a witness on the trial, and said he was born in that parish, lived there all his life, and was fifty-seven years old. He said: "I have been a planter all my life. I live about three or four miles from the Chastant plantation. I have always resided at the same place. I made an estimation of the property of Chastant before it was sold. I do not now recollect the amount at which the property was appraised, but I was one of the sworn appraisers. The property was estimated at that time at the value which it possessed then."

This statement was corroborated by the evidence of Lejeune, an old resident and planter of the immediate neighborhood, who was also an appraiser at the taking of the inventory.

The district judge who heard the delivery of the evidence by the witnesses, attached more importance to the evidence of the assessor, to the inventory made by the court prior to the sale, and the evidence of the appraisers who testified in the case. He finally fixed the relative value of the land and movables at half the amount of the whole debt, and rendered judgment accordingly.

After a careful review of the law and the evidence, we have concluded that there is no reason to disturb the judgment of the court below.

Judgment affirmed.

LUDELING, C. J., *dissenting.* I dissent from the judgment of the court in this case, for the reasons stated by me in the case of Sandidge *v.* Sanderson

HOWELL, J., *dissenting.* As the case of Soniat *v.* J. Chastant was finally disposed of in my absence, and that of Sandidge *v.* Sanderson is not yet final, I deem it proper to express my dissent, for the reasons given by me in the latter case, from the conclusions of the majority of the court in this cause.

Rehearing refused.