KUHN v. BERCHER.

---

(38 South. 468.)

No. 15,363.

KUHN et al. v. BERCHER et al.*

(Feb. 27, 1905.)

DECEDENT'S ESTATE — STALE DEMANDS — PAYMENT—PRESUMPTION—BURDEN OF PROOF—PRESCRIPTION.

1. Stale demands, withheld from prosecution until after the death of the alleged debtor and all the parties interested in and cognizant of the transaction, are regarded with disfavor, and, where no hindrance was in the way, must be established with more than reasonable certainty.

2. Plaintiffs, who in 1904 demanded the collation of an alleged debt against the minor children of a deceased coheir, based on the assumpsit of certain mortgage debts of the common ancestor in an act of sale passed in 1875, and who alleged that the purchaser did not discharge the said debts, and for that reason became the unconditional debtor of the vendor, who died insolvent in 1878, assumed the burden of proving the negative averment on which they relied, and to rebut the presumption of payment resulting from the silence and inaction of creditors and coheirs and the running of prescription against the assumpsit and the mortgage debts.

3. It is unnecessary to decide whether a debt of a child to his father, originating in an onerous contract, is prescriptible after the death of the creditor only by the lapse of 30 years, as against coheirs demanding its collation.

(Syllabus by the Court.)

Appeal from First Judicial District Court, Parish of Caddo; Thomas Fletcher Bell, Judge.

Action by Andrew Kuhn, tutor, and others against Cora Bercher, tutrix, and others. Judgment for plaintiffs, and defendants appeal. Reversed.

---

*Rehearing denied April 10, 1905.

Alexander & Wilkinson, for appellants. David Thompson Land, for appellees.

LAND, J. Fidele Bercher died at his domicile, in the city of Shreveport, in the year 1878, and his widow, Mrs. Fredericke C. Bercher, died in 1882. They left seven children, all of age, to wit, Mrs. Deal, Mrs. Dorian, Mrs. Doll, Mrs. Schilling, Mrs. Wappler, George Bercher, and Wm. A. Bercher.

This suit filed in January, 1904, is an action of partition, in which the first-named six heirs are plaintiffs, and the minor children of W. A. Bercher are defendants.

Plaintiffs allege "that the said Fidele Bercher and his wife, at the time of their death, left no property or assets, except a debt due by the said W. A. Bercher to their succession," which originated from the assumpsit by the said W. A. Bercher of certain mortgages resting on several pieces of real estate conveyed to him by Fidele Bercher on September 6, 1875. The petition represents that the said assumpsit bound W. A. Bercher personally to pay the mortgage debts, with interest, as a part of the purchase price, and that this obligation was secured by vendor's privilege on all the property conveyed; that W. A. Bercher died without paying said mortgages, and that the only payments made on same resulted from the seizure and sale of two of the three parcels of real estate by the mortgage creditors. The petition further alleged that the balance of said mortgages, with interest, assumed by him as part of the purchase price of said property, was due by him personally, and operated as a vendor's privilege on the remainder of the property in Texas avenue included in said sale.

The petition details the mortgages covered by the assumpsit, the partial payment made by judicial sales of portions of the property, and concludes with a prayer for judgment against the succession of W. A. Bercher for the sums and interest claimed, and ordering said succession to collate said sums and interest for partition in the succession of Fidele Bercher and wife, and decreeing that the same are secured by vendor's privilege on the property on Texas avenue included in the sale of September 6, 1875. The answer was a general denial, coupled with a plea of res judicata, and a plea of the prescription of 5 and 10 years. There was judgment for plaintiffs, and defendants have appealed.

On September 6, 1875, Fidele Bercher conveyed to his son W. A. Bercher, by act of sale duly recorded, all his real estate in the city of Shreveport, consisting of three properties, all subject to special mortgages. The act recited that the sale was made "for the consideration of the sum of Three Thousand (3000) Dollars, said sum being due said purchaser for wages for five years' services, the receipt of which is hereby acknowledged, and for the further consideration of the assumpsit by said purchaser of all mortgages now existing on the records of Caddo Parish, against above described property, to-wit: [Here follows a detailed statement of four special mortgages, giving dates, amounts, rate of interest, etc.]"

It may be here stated that Fidele Bercher was a brewer, married, and had seven children, one of whom was W. A. Bercher, who worked with his father in the brewery business. The properties conveyed may be styled, for convenience, the brewery, the half lot on Texas street, and the Thornhill lots.

The mortgage on the brewery property was in favor of Mrs. E. Williams and for the sum of $2,781.25, with 8 per cent. interest from December 9, 1874.

There were two mortgages on the Texas street lot, one in favor of Edward Jacobs, for $1,200, with 8 per cent. interest from May 6, 1872, and the other in favor of Henry Rosenblath, with 8 per cent. interest from October 1, 1872.

The mortgage on the Thornhill lots was for $2,810, in three notes, with 8 per cent.

interest from April 28, 1878, maturing in one, two, and three years.

The Jacobs mortgage was foreclosed in 1876, and the half lot on Texas street adjudicated to him for $800.

In the same year the mortgage on the Thornhill lots was foreclosed, and they were adjudicated to D. B. Martin, holder of the three notes, for $620.

In January, 1877, the mortgage of Mrs. E. Williams on the brewery property was canceled in full.

Fidele Bercher died in 1878, and his wife died in 1882. W. A. Bercher died in 1898, leaving a widow and several minor children. The widow was confirmed as natural tutrix, and the brewery property, less one lot transferred by W. A. Bercher to his sister Miss A. F. Bercher, now Mrs. Schilling, plaintiff herein, was inventoried as the property of said minors.

In 1903, plaintiffs herein brought suit in the district court of Caddo parish against said minors, represented by their tutrix, for the purpose of having the sale of September 6, 1875, from Fidele Bercher to W. A. Bercher, declared utterly null and void as a pure sham and simulation. The case was tried, and the court held that such sale was not a simulation, but a real contract, based on wages justly due and an assumpsit of mortgages then resting on the property.

Plaintiffs thereupon instituted the present suit for a partition, alleging that the amounts of the special mortgages, with interest as stipulated, less the proceeds of two judicial sales, constituted a debt due by W. A. Bercher to the successions of his father and mother, and that the minor heirs were bound to collate the same for the purposes of a partition.

The evidence in the case is almost entirely documentary, and the oral evidence does affect the merits of the controversy.

Counsel for defendants offered in evidence the record cancellation of the special mortgage in favor of Mrs. E. Williams. Plaintiffs' counsel objected, on the ground that defendants had not pleaded payment. This objection was properly overruled. The cancellation was evidence of payment. There was no evidence introduced in this case to show by whom or out of what funds payment was made. Counsel pleaded the judgment of the district court in the simulation suit as res judicata as to the fact that this mortgage was paid by Fidele Bercher. It is true that this matter was discussed in the opinion handed down by the district judge, but it was not adjudged, nor was it necessary to do so on the question of simulation.

Evidence tending to prove that Fidele Bercher paid this mortgage was adduced for the purpose of proving simulation. The judge, in commenting on the evidence, said that, if the testimony of the husband of one of the plaintiffs was admissible, he was of opinion that the evidence showed that Fidele Bercher paid $2,100 on the Williams mortgage, but that the testimony was too weak to prove that he paid the balance due on the same. The judge then said:

"Assuming the fact to be that in 1876, and again in 1877, Fidele Bercher came into possession of money which was used in paying the mortgage in whole or in part, it does not follow that the sale made in 1875 was a pure simulation. Such payments may have been a loan or advance of money, and, if a gift or donation, the coheirs had their remedy."

The evidence in the former suit was not offered on the trial below, and it cannot be said that it was adjudged that Fidele Bercher paid $2,100 on the Williams mortgage for $2,781.25, with interest thereon.

Plaintiffs offered no evidence in this case to prove payments made by Fidele Bercher, though they alleged that W. A. Bercher paid nothing on the mortgage. The record shows that the mortgage was paid in full and canceled. The evidence does not show by whom it was paid. There is no presumption of law that it was paid by Fidele Bercher. The presumption that W. A. Bercher discharged the

obligations assumed by him, we think, may be inferred from all the facts and circumstances of the case.

The Williams mortgage on the brewery property was canceled in full on January 18, 1877. By virtue of the assumpsit of W. A. Bercher, the debts due Rosenblath, Jacobs, and Martin were secured by vendor's privilege on the brewery property. The notes held by these parties were not on their face prescribed on January 18, 1877, and prescription had been interrupted by the assumpsit of September 6, 1875. As these three creditors had the legal right to enforce their vendor's privilege on the property before and after the death of Fidele Bercher, and did not do so, the inference is that their claims were paid or satisfied, since no one is presumed to give or to remit a debt.

Fidele Bercher died in 1878, and his wife in 1882. The testimony in this case shows that W. A. Bercher took possession of the property in 1875, and that this possession continued until his death in 1898, when it passed to his minor children. It is alleged by plaintiffs that "Fidele Bercher and his wife, at the time of their death, left no property or assets," except the alleged debt due by W. A. Bercher. Yet it is neither alleged nor shown that his coheirs made any demand against W. A. Bercher or his estate, founded on such alleged debt, until the institution of the present suit in the year 1904. The transfer of a portion of the brewery property to Mrs. Schilling after the death of the father, though in the form of a donation, smacks strongly of a family settlement.

In 1903 the present plaintiffs assailed the title of W. A. Bercher's minor children as a pure sham and simulation. Failing to recover the property on this ground, they now seek to bring it or its proceeds into the succession, on the theory that the sale of 1875 was a real, bona fide transaction, but that the purchaser did not pay the mortgages assumed by him. They offer no evidence to prove their averment that W. A. Bercher did not pay the mortgages, but take the position that the burden is on his minor children to plead and prove payment. The demand of plaintiffs is either a claim which they never considered as justly due them, or they have deferred action thereon until after the death of all the parties to the transaction, including the mortgage creditors. Under such conditions it is impossible for courts to ascertain the truth and to do justice. "A stale demand long withheld from presentation or prosecution, until he against whom it is preferred has died, is regarded with disfavor. It must be established, when no hindrance was in the way, with more than reasonable certainty. The unfavorable presumption created by delay can be removed only by peculiarly strong and exceptionally conclusive testimony." Wood v. Egan, 39 La. Ann. 684, 2 South. 191.

One of the plaintiffs took the stand, and testified that some 15 years previously she had consulted a lawyer with reference to the sale of September 6, 1875, and that he advised her that, if she could prove that her brother had not paid the mortgage notes, the sale would be null and void. This witness further testified that she did not find out that the notes were not paid until 1903, when her brother-in-law told her so. The informant was not put on the witness stand. Plaintiffs' whole case rests on the assumpsit of 1875, and the contention is that they are entitled to judgment unless defendants prove payment of the mortgage debts. We think that all the facts and circumstances of the case tend to that conclusion. The mortgage debts and the assumpsit in favor of the mortgage creditors have been prescribed for many years. The presumption of payment, which the law raises in case of prescription releasing from debt, is juris et de jure. Brown v. Union Ins. Co., 3 La. Ann. 177; Levistones

v. Marigny, 13 La. Ann. 353; Hebert v. Chastant, 22 La. Ann. 152; Ferrand v. Bres' Heirs, 35 La. Ann. 908.

As between W. A. Bercher and the mortgage creditors, the law conclusively presumes payment or settlement.

The very object of prescription is to dispense with proofs of payment. We see no reason why defendants cannot reply to plaintiffs that "the law presumes that our ancestor discharged these mortgage debts." Plaintiffs have adduced no evidence to rebut this presumption.

The succession of Fidele Bercher was insolvent. There was nothing to partition among his heirs. Their acceptance of the insolvent succession would have made them personally liable for debts. If W. A. Bercher owed a collation based on the same debts, his coheirs could not have demanded such collation without assuming their virile shares of all the debts of the succession. "Ex nihilo nihil fit."

W. A. Bercher received no gift or donation from Fidele Bercher, but made an onerous contract with him. By this contract W. A. Bercher assumed the debts of his father.

The very foundation of plaintiffs' action is the averment that W. A. Bercher did not pay these debts. Though negative in character, plaintiffs were bound to prove the averment. Humphreys v. Switzer, 11 La. Ann. 320; Barrow v. Robichaux, 14 La. Ann. 207. The demand is stale, and in such cases the law requires evidence of more than reasonable certainty.

We have noted the difficult questions of collation and prescription raised in this case, but deem it unnecessary to pass upon them, in the absence of satisfactory evidence that the ancestor of defendants ever justly owed his coheirs the amounts demanded.

The judgment appealed from is annulled, avoided, and reversed, and it is now ordered that plaintiffs' suit be dismissed, with costs in both courts.