On Rehearing.
PROVOSTY, J.
The accused was convicted of bigamy on an information filed by the district attorney. He applied ineffectually for a new trial, and then appealed to this court. On a first hearing a large number of bills of exceptions which had been reserved by him were found to be without merit. One of the bills, however, was sustained, and the judgment below and the verdict were set aside, and the case was remanded to be proceeded with according to law. A rehearing was granted to the state, and the case is now before us on this rehearing.
The bill which was sustained, and which has now to be considered, is that relating to the refusal of the trial court to grant a new trial on the ground that on the trial the state offered no evidence in support of the following allegation:
“That the said offense was not made known to any officer of the law, having the authority to begin a public prosecution thereof, until the 29th day of January, 1919.”
The contention on the motion for a new trial was, and in this court now is, that in the absence of proof of this allegation the case is amenable to section 986, R. S., reading:
“No person shall be prosecuted, tried or punished for any offense, wilful murder, arson, robbery, forgery and counterfeiting excepted, unless the indictment or presentment for the same be found or exhibited within one year next after the offense shall have been made known to a public officer having the power to direct * * * prosecution. * * * Nothing herein contained shall extend to any person absconding or fleeing from,justice.”
The information was filed on January 31, 1919, more than three years after the alleged date of the commission of the offense.
In ruling as he did, the learned trial judge based himself upon the decisions of this court in State v. Barrow, 31 La. Ann. 691, State v. Barfield, 36 La. Ann. 90, and State v. Robinson, 37 La. Ann. 676.
The latter two decisions are founded upon the bare authority of the first, the Barrow Case. The question was not re-examined in them. In the Barrow Case the court reasoned as follows:
“Ordinarily a negative averment has not to be proved, and often cannot be. The negation is not susceptible of proof, other than by proof of the affirmative fact which'is'denied. The *771 negation here is that knowledge of the crime was not brought to a public officer of requisite authority. The proof must be of the affirmative fact that such knowledge was thus brought to him. Upon whom is the onus?
“It must rest on the party who can most conveniently and most certainly make the proof. Now an affirmative can more certainly, naturally, and logically be proved than a negative. If the onus is on the state, then it must prove that knowledge was not brought to any of its officers who had authority to investigate the crime. It must prove a universal negative. If the onus is on the defendant, he need only prove that knowledge was brought to one of such officers. He need only prove a particular affirmative.”
This reasoning is not satisfactory. In so far as it is sound, it is based on a proposition which the court has assumed to be true, but which in fact is not true. We refer to the assumption upon which the decision rests largely (and perhaps, in final analysis, rests entirely) that the negative which the state is called upon to prove in such a case is “a universal negative.”
Treating of the burden of proof where a negative is involved, Best on Ev. § 270 (page 262 of Chamberlayne’s Ed.), says:
“Much misconception and embarrassment have been introduced into this subject by some unfortunate language in which the above principle has been enunciated. ‘Per rerum naturam,’ says the text of the Roman law, ‘factum ne-gantis probatio nulla sit;’ and our old lawyers lay down broadly, ‘It is a maxim in law that witnesses cannot testify a negative, but an affirmative.’ For these and similar expressions it has been rashly inferred, and is frequently asserted, that ‘a negative is incapable of proof’ —a position wholly indefensible, if understood in an unqualified sense. Reason and the context of the passage in the Code alike show that by the phrase ‘Per rerum naturam,’ etc., nothing more was meant than to express the undoubted truth that, in the ordinary course of things, the burden of proof is not to be cast on the party who merely denies an assertion. The ground on which this rests has been already explained; and another grave objection to requiring proof of a simple negative is its indefiniteness. ‘Words,’ says L. C. B. Gilbert, ‘are but the expression of facts; and therefore/ when "nothing is said to be dohe, nothing can-be said to be proved.’ ‘Negativa nihil impli-cat.’ ‘Negativa nihil ponunt.’ A person asserts that a certain event took place, not saying when, where, or under what circumstances; how am I to disprove that, and convince others that at no time, at no place and under no circumstances, has such a thing occurred? ‘In-definitum aequipollet universali.’ The utmost that could possibly be done in most instances would be to show the improbability of the supposed event; and even this would usually require an enormous mass of presumptive evidence. Hence the well-known rule that affirmative evidence is in general better than negative evidence. But when the negative ceases to be a simple one, when it is qualified by time, place, or circumstances, much of this objection is removed ; and proof of a negative may very reasonably be required when the qualifying circumstances are the direct matter in issue or the affirmative is either probable in itself, or supported by a presumption, or peculiar means of proof are in the hands of the party asserting the negative.” (Italics ours.)
Now, "the qualifying circumstances” of the negative which the state is called upon to prove in cases like the present “are the direct matter in issue,” as will be shown hereinafter ; and “peculiar means of proof are in the hands of the party,” the slate, “asserting the negative.”
These means are, the judge, the district attorney, and the sheriff of the parish, all three of whom are present in court at the trial of the case. They are the public officers to whom section 9S6, R. S., has reference. And even if said statute had reference also to the sheriff’s deputies, and to the justice of the peace and the constable of the ward where the offense was committed, there would be no impossibility of calling these officers also to the witness stand, or accounting for their absence. It is not true, therefore, to say that the state would in such a case be called upon to prove a negative impossible to be proved, or a so-called “universal negative.”
It will be noted, moreover, that the cases in which it becomes necessary for the state to make this proof are those in which the *773 commission of tlie crime lias but recently been discovered, or in wbicb the persons haying knowledge of it haye kept it secret, and that all this is susceptible of direct affirmative proof. Besides, in all such cases the fact of the crime having remained undiscovered, or of its having been kept a secret, is so notorious that the state would hardly have any difficulty in getting the counsel of the defense to admit that no knowledge of the offense had come to a public officer.
Another assumption which in our humble judgment is made gratuitously in this Barrow Case is that it is easier for the accused to show when the prosecution acquired knowledge of the offense than it is for the prosecution to show that fact. It seems to us perfectly plain that the person who has acquired knowledge of a certain fact knows best when, where, and under what circumstances the knowledge was acquired. Por instance, the allegation in this case is that the knowledge in question was first made known to an officer on the 29th day of January, 1919. Why could not that fact have been proved? If the district attorney could be so precise in alleging it, why could he not prove it? The prosecuting officers most unquestionably know in every case when, from whom, and under what circumstances they first became informed of an offense having been committed. Why may they not make proof of those facts? On the other hand, how is an accused to know when, where, and how the prosecution acquired knowledge of the offense, unless, indeed, he happens to have been present when the knowledge was acquired? And if he knows it because he was present, why should not the officer 'who was also present know it just as well? Proof of when the prosecution first became advised of the offense would carry with it proof that knowledge had not come sooner to any public officer of requisite authority; for then every inference would point that way; and that conclusion could be safely accepted in the absence of anything to the contrary. The law, being eminently practical, does not require the impossible ; but it does, in favor of liberty, allow an accused to remain passive until a case has been made out against him; and, as will be shown hereinafter, a case is not made out against an accused when the time at which the offense is alleged to have been committed antedates the finding of the indictment or the filing of the information more than a year, and no proof is made that knowledge of the offense came to an officer of requisite authority only within the year.
The eminent judges who rendered this Barrow decision allowed themselves, we fear, to wander into the fog and morass of the burden of proof, and, with all due respect be it said, lost their way. Notwithstanding the presumption with which the law panoplies an accused, they have actually made his case harder than that of the ordinary litigant in a civil case; for there the plaintiff loses his case if from the pleadings his claim appears to be out of date and he does not prove the circumstances which have operated to keep it alive. Rabel v. Pourciau, 20 La. Ann. 131; Schlenker v. Taliaferro, 20 La. Ann. 565; Durand v. Hienn, 20 La. Ann. 345; Kentucky Bank v. East, 21 La. Ann. 276; Boyle v. Kittredge, 21 La. Ann. 273; McStea v. Boyd, 21 La. Ann. 501; Peet v. Jackson, 21 La. Ann. 267; Griffin v. Drainage District, 110 La. 840, 34 South. 799.
An allegation can no more prove itself simply because it is of a negative than an engine can furnish its own energy, or a man lift himself by pulling on the straps of his boots.
The rule of evidence, far from being that a litigant is not required to prove a negative when the establishment of it is neces *775 sary to bis case, is just tlie otlier way, and as to tins all the modern writers on the law of evidence are agreed.
Chamberlayne, Ev. par. 979, states the rule as follows:
“A special and peculiarly forcible instance of the application of these rules regarding discharge of the burden of evidence concerning" facts which are within the knowledge or control of the other party is afforded where the fact or proposition to which the burden relates is in substance negative. The rule that the party to whose contention in the cause a fact is essential has the burden of evidence in regard to it is in no way'displaced by the circumstance. It is still part of the litigant’s burden of evidence to prove the negative proposition of fact, as that a certain quality does not exist in a process, thing, or person. Ho may properly be required to prove that a certain event has not happened, that a fact did not exist, or that a given person has not done a certain thing. Mere difficulty of making proof does not prevent the tribunal from requiring him that he show, as best he may, that a designated individual does not possess a certain thing.”
Elliott, Ev. par. 141, states the rale as follows:
“It is frequently said that a party is not bound to prove a negative, nor a fact peculiarly within the knowledge of the opposite party, and that the latter may have the burden of disproving it, but the mere form of an averment is Of little consequence, so far as the rule as to burden of the issue is concerned, and if, in order to establish his case and move the court in his favor, a party must prove a negative, the burden is usually upon him to do so. As a rule it is only where the fact negatived is peculiarly within the knowledge of the adversary that the burden is, in any sense, shifted to the latter, and even then it is the burden of going forward rather than the burden of ultimately establishing the case. The fact that the party having peculiar knowledge of a matter fails to bring it forward may raise a presumption or justify an inference in favor of his adversary’s claim, and thus shift the burden of proceeding in order to win, but the burden of establishing the issue is not shifted, nor is it ordinarily determined in the first instance by the mere fact that a negative is involved or that some fact is peculiarly within the knowledge of the adverse party.”
Wigmore, Ev. par. 2486, states the rale as follows:
“The characteristic, then, of the burden of proof (in the sense of a risk of nonpersuasion) in legal controversies is that the law divides the process into stages, and apportions definitely to each party the specific facts which will in turn fall to him as the prerequisites of obtaining action in his favor by the tribunal. It is this apportionment which forms the important element of controversy for legal purposes. Each party wishes to know of what facts he has the risk of nonpersuasion. By what considerations, then, is this apportionment determined? Is there any single principle or rule which will solve all cases and afford a general test for ascertaining the incidence of this risk? By no means. It is often said that the burden is upon the party having the affirmative allegation. But this is not an invariable test, nor even always a significant circumstarfce; the burden is often on one who has a negative assertion to prove; a common instance is that of a promise alleging nonperformance of a contract. It is sometimes said that it is upon the party to whose case the fact is essential. This is correct enough, but it merely advances the inquiry one step; we must then ask whether there is any general principle which determines to what party’s case a fact is essential.
“The truth is that there is not and cannot be any one solvent for all cases. It is merely a question of policy and fairness based on experience in the different situations. * * *
“This last consideration has often been advanced as a special test for solving a limited class of cases; i. e., the burden of proving a fact is said to be put on the party who presumably has peculiar knowledge enabling him to prove its falsity if it is false. But this consideration furnishes no wox-king rule; if it did, then the plaintiff in an action for defamation charging him to be living in adultery should be required to prove that he is lawfully married. This consideration, after all, merely takes its place among other considerations of fairness and experience as one to be kept in mind in apportioning the burden of proof in a specific case.”
Prom Cyc. 936, we take the following:
“Proof of Negative Foots. — The party whose contention requires proof of a negative fact has the burden of evidence to prove that fact. In deciding however, what quantum of evidence shall be deemed sufficient, the practical limita *777 tions on proof imposed by the nature of the subject-matter or the relative situation of the parties will be considered, and the burden of evidence will be sustained by proof which renders probable the existence of the negative fact; circumstantial evidence being sufficient, and nothing in the nature of a demonstration being required.”
To same effect, Jones, Ev. (2d. Ed.) § 179.
Our own reports are full of cases where a litigant has been held to be bound to prove a negative allegation upon which his case depended. Solon Humphreys v. Switzer, 11 La. Ann. 320; Sehneideau v. Pennington, 21 La. Ann. 299; Kuhn v. Bercher, 114 La. 602, 38 South. 468.
“A fact material to plaintiff’s case and susceptible of proof by him he must prove, though negative in character.” Hennen, Dig. p. 497, No. 30, and cases there cited.
Having thus, as we believe, shown that the negative allegation in question is not insusceptible of proof by the state, and that simply because an allegation is negative in character a litigant is not dispensed from proving it, if necessary to his case, we come to the question whether the said allegation which the state failed to prove in this case was necessary to the case of the state.
Holding the affirmative of that question, the decisions are legion. We cite the following, not as exhausting the list, but as being those we have had occasion to examine in the course of the preparation of this opinion: An indictment or information which shows the lapse of more than one year between the date of its filing and the date which it alleges to have been that of the commission of the offense is fatally defective. State v. Freeman, 17 La. Ann. 69; State v. Foster, 7 La. Ann. 256; State v. Bryan, 19 La. Ann. 435; State v. Victor, 36 La. Ann. 978; State v. Joseph, 40 La. Ann. 5, 3 South. 405; State v. Foley, 113 La. 206, 36 South. 940; State v. Pierre, 49 La. Ann. 1159, 22 South. 373; 39 La. Ann. 1085, 3 South. 266; 39 La. Ann. 1108, 3 South. 342; 39 La. Ann, 1112, 3 South. 343; 44 La. Ann. 973, 11 South. 580; 44 La. Ann. 1016, 11 South. 541; 105 La. 641, 30 South. 119; 19 La. Ann. 90; 19 La. Ann. 76; 19 La. Ann. 435; 30 La. Ann. 402, 403; 30 La. Ann. 842 ; 30 La. Ann. 1135; 30 La. Ann. 1167; 48 La. Ann. 736, 19 South. 671; 48 La. Ann. 803, 19 South. 745 ; 48 La. Ann. 1362, 20 South. 911; 17 La. Ann. 69; 32 La. Ann. 844; 23 La. Ann. 433; 113 La. 208, 36 South. 940; 51 La. Ann. 1648, 26 South. 437; 132 La. 749, 61 South. 778; 121 La. 522, 46 South. 614; 49 La. Ann. 1354, 22 South. 617; 49 La. Ann. 594, 21 South. 724; 49 La. Ann. 1210, 22 South. 327; 37 La. Ann. 673; 34 La. Ann. 1073, 1076; 117 La. 469, 41 South. 793; 31 La. Ann. 211. In those cases whose titles are given the defect of the indictment was taken advantage of by motion in arrest of judgment. In the case of State v. Forrest, 23 La. Ann. 433, this court noticed it ex proprio motu.
The rationale of these decisions is that an act or conduct which is not punishable is not a crime or offense within the intendment of the criminal law, and that therefore, in order to set forth a crime — i. e., an act amenable to the criminal law, the indictment or information, when more than a year has expired between the date of its filing and that of the offense, must allege the facts which take the case out of the operation of the hereinabove transcribed section 986, K. g., according to which an offense, save in the expressly excepted cases, is no longer punishable after the expiration of one year from the date of its commission.
[18] We have no so-called common-law crimes in this state. Nothing is a crime which is not made so by express statute. A violation of the moral law, or of the public policy of the state, no matter how gross, is not a crime unless expressly made so by statute. And for being made a crime a penalty must needs be denounced. With *779 out a penalty being denounced, all the declarations the Legislature might make on the subject would not render the offense amenable to the criminal laws as administered by the public authorities; all such legislative denunciations and declarations, unaccompanied by the fixing of a penalty, would be mere brutum fulmen. So that in this connection a crime may be defined to be an act or conduct for the commission of which a penalty is denounced by statute. Consequently, when the said section 986, R. S., says that after one year from the commission of an offense the offender shall not be punished, the legal situation is that after the lapse of that period the act or conduct charged against an accused as a crime has ceased to be such. When, therefore, it is made to appear, whether by allegation, by proof, or otherwise, that the act or conduct charged against the accused as a crime antedates by more than a year the filing of the indictment or information in court, the legal situation is that no crime — i. e., no punishable act or conduct — is shown, and that, in order to show.a crime, the prosecution must show that the operation of said section 986, R. S., has been arrested or prevented. Without such a showing the act or conduct charged, being more than a year old, is not punishable, and hence is not a crime, since in this state nothing is a crime which is not expressly made so by statute, and since the only way in which a violation of the moral law or of the public policy of the state can be made a crime is by making it punishable.
As the absence of knowledge on the part of any officer authorized to prosecute was necessary to be proved in order that the more than a year old act charged against the accused should be punishable — in other words, in order that there should be a crime shown — said proof was essential to the case of the state, and therefore had to be made, though negative in character. The host of decisions cited above holding said absence of knowledge to be essential to be alleged in order that a crime should appear are, in principle, in direct opposition to the said Barrow Case; for they hold that the facts arresting or preventing the operation of said section 986, R. S., must be made to appear by the state in order that a crime should be made to appear; and all the authorities on the law of evidence, including all of our own decisions, without a single, exception, are agreed, and it stands to reason, that a litigant must prove the facts essential to the establishment of his case.
Difference of opinion has arisen only when it has come to determine when a negative allegation is impossible of proof (in which case proof is dispensed with) or when a matter is so essentially within the knowledge of the one party and the evidence with regard to it easily to be produced by him, whereas not in the knowledge of the other party and the evidence with regard to it difficult to be produced by him, that the law as a matter of discretion (not as a matter of logic, be it noted, but purely as a matter of discretion wisely to be exercised in the practical administration of justice) will shift the burden of proof from the party on whom it would, as a matter of mere logic, rest. And this is where, as appears to us, the court •erred in this Barrow Case. The court there assumed that the negative in question was “a universal negative,” and therefore impossible of proof, and that the matter was one so evidently within the knowledge of the accused, and not within the knowledge of the prosecution, the evidence on which could be so much more easily produced by the accused than by the state that the state should be dispensed from making the proof of it, however essential such proof was for making out a case against the accused. Thereby the court practically held that the accused had to show that he was not ame *781 nable to- the criminal law, not that the state had to show that he was. The court reversed the universally accepted order of things.
We note in passing that the question is not one of the quantum or sufficiency of evidence, but of exemption from the necessity of making any proof at all. If it were the former, this court, in the first place, could not deal with it, for it would then be a question of fact, viz. whether the evidence as to a particular fact was sufficient; and, in the second place, different considerations would came into play.
We may mention also in passing that cases wherein allegations, whether affirmative or negative, have been dispensed from proof because supported, or proved, by some legal presumption, as, for examples, the presumption of sanity, the presumption of innocence, the presumption omnia rite acta, the presumption against fraud, or other evil conduct, have no application whatever in this case, bear no analogy; they being governed by principles entirely inapplicable to this case. In this case, on the contrary, the presumption is in favor of the accused; and the applicable general principle is that in a criminal case the burden of proof never shifts, but continues to rest upon the prosecution throughout the trial.
The contrary of the doctrine of this Barrow Case has been held in a number of decisions of this court; and that an impression con.tra.ry to it has prevailed both with the profession and with this court is evidenced by many dicta which seem to have assumed that the matter was one as to which there could be no difference of opinion. Among others of these decisions and dicta we may cite the following:
In State v. Strong, 39 La. Ann. 1085, 3 South. 267, the question being as to whether or not the commission of the offense had been brought to the attention of an officer within one year, the court said:
“The evidence of prescription * * * was properly submitted to the jury. It was a proper issue for them to try. It was a question of fact appertaining to the merits of the controversy, which could be passed upon by the jury alone.”
In State v. West, 105 La. 639, 30 South. 119, this court held that the question of prescription had to be referred to the jury, and said:
“We are decidedly of the opinion that in order that the jury may find a verdict of guilty, it must clearly appear to the satisfaction of the jury that the plea of prescription is not well founded. This court has decided that everything essential to the punishment must be found by a jury to authorize the court to pass sentence.”
In State v. Snow, 30 La. Ann. 402, this court said:
“The burden is upon the state to rebut the plea.”
In State v. Morrison, 31 La. Ann. 211, this court said:
“In such prosecutions, unless the state shows a previous indictment of the same person for the same offense, found within the year, or cause why such indictment was not found, such as the absconding of the offender or that the commission of the crime had not been known to the authorities before, the conviction will not be sustained.”
In State v. Freeman, 17 La. Ann. 69, this court said:
“These facts [made known to the public officer] should have been charged in the bill of indictment, and proved to the satisfaction of the jury to support the verdict for manslaughter.”
In State v. Foster, 7 La. Ann. 256, the court said:
“It is true it was alleged in opposition to the motion in arrest of judgment that the prisoner had fled from justice. * * * We do not think the court had power to try that fact, but that it should have been distinctly charged in the indictment, and proved on the trial by the oaths of witnesses * * * to the satisfaction of the jury, to support their verdict.”
*783 In State v. Bryan, 19 La. Ann. 435, the court said:
“It is not charged in the indictment that the prisoner absconded or fled from justice nor is it alleged that the crime was not discovered and denounced until within a year of the finding of the grand jury; until one or other of these facts is alleged and proved to the satisfaction of a petit jury, the prisoner, in the words of the statute, cannot be punished for larceny. Everything essential to the punishment of the prisoner must be found by a jury of her country, and must appear of record; otherwise, the law does not authorize a court to pass a sentence upon her.”
In State v. Victor, 36 La. Ann. 978, the court said:
“To admit proof on the trial touching the existence of the facts necessary to a suspension of prescription it is esential that these facts must be averred in the indictment.”
The assumption was made here both by counsel and by the court that the proof of the facts required for taking the case from under the operation of section 986, R. S., was incumbent on the state.
In State v. Joseph, 40 La. Ann. 5, 3 South. 405, where the state asked that the case be remanded so as to afford the prosecution an opportunity to amend the indictment so as to make the allegations necessary for arresting the operation of said section 986, R. S., the court said:
“This cannot be done. The law contemplates and requires that amendments to an indictment must be made during the progress of the trial and before the case is submitted to the jury. This is especially manifest whore the amendment consists, as in the instant ease, of the averment of facts to be necessarily passed upon by the jury in making up their verdict.”
In State v. Bilbo, 19 La. Ann. 76, the accused moved to quash on the ground that the indictment contained no allegation of flight or of want of knowledge on the part of an officer. The court said:
“On its face the indictment does not contain everything essential to punishment of the accused, and which must have been found by the jury before sentence could be rendered.”
In State v. Hoffman, 120 La. 951, 45 South. 953, where the question came up again, this court said:
“The defendant does not have to plead prescription in order that the state should have to prove the finding of an indictment within the year. The statute provides that ‘no person shall be prosecuted unless the indictment is found within one year.’ It follows from this that, unless the state proves that an indictment was found within one year, the state does not prove anything against the defendant for which he can be prosecuted. So true is this that without such an allegation in the indictment no crime is shown, and a motion in arrest of judgment is good. State v. Foley, 113 La. 206, 36 South. 940; State v. Pierre, 49 La. Ann. 1159, 22 South. 373; State v. Joseph, 40 La. Ann. 5, 3 South. 405; State v. Victor, 36 La. Ann. 978, etc. It stands to reason that matter which must be alleged in order that a crime should be alleged must bo proved in order that a crime should be proved.”
Article 93 of Stephen’s Digest of the Law of Evidence, reads:
“Whoever desires any court to give judgment as to any legal right or liability dependent on the existence or nonexistence of facts which he asserts or denies to exist must prove that those facts do or do not exist.”
Therefore, when the prosecution in the instant case, after having fixed the date of the commission of the alleged offense at more than three years before the filing of the information, closed its case without having offered any evidence of a knowledge of the offenses not having come to a public officer of requisite authority until within the year, the accused was entitled to be acquitted; for the case made out by the evidence was one to - which the said' section 986, R. S., applied plainly and clearly.
If we take a purely common sense view of the matter, we reach the same conclusion. That the allegation must be made is decided in the host of cases hereinabove cited, and is *785 conceded. That it cannot be made as a matter of inference, or argumentatively, hut must he made as a matter of knowledge, positively, has also to be conceded, since it stands to reason that an accused cannot be brought before the criminal tribunals and put on his defense on inference, but only on positive knowledge. If, for instance, the averment against him were that the district attorney did not know whether or not knowledge of the 'offense had been brought to an officer authorized to investigate or prosecute, but that from the fact that no investigation had in fact been made, or prosecution begun, he inferred that such knowledge had not come, the allegation would most assuredly, be deemed insufficient. Now, if the allegation is made from positive knowledge, why may not the facts upon which the knowledge is based be proved? In the present case, for instance, the allegation is made that the commission of the offense in question “was not made known to any officer having the authority to begin a public prosecution thereof until the 29th day of January, 1919.” Did the district attorney make this allegation because he knew it to be true, or did he make it not knowing whether it wds true or false, thereby running the risk of its being made by him falsely against the prisoner? If he had knowledge of its truth, why could he not produce the evidence of the facts upon which such knowledge was based? If, on the other hand, he made this allegation without knowledge of its truth, incurring the risk of making against a prisoner a false statement of fact, how, we ask, does such conduct accord with the morality of our law, and are the trial court and this court to participate in that line of conduct by sanctioning it?
[19] On this rehearing the state makes the point that after verdict it was too late for the accused to seek to take advantage of the absence of this evidence; that the useful time and mode of taking advantage of it was before verdict by the request of a special charge to the jury.
We cannot agree with that view. If an accused has been condemned without evidence, there is nothing for it but to set aside the verdict. The question of absence of evidence must not be confounded with that of insufficiency of evidence. The one involves an appreciation of the law; the other of the evidence. The one is cognizable by this court; the other not. If an accused has been condemned without any evidence at all having been adduced against him, on the assumption, let us suppose, that the allegations of the indictment must be taken for true until disproved, the plain duty of the court is to set the verdict aside; and the question involved is one purely of law, viz. whether an accused can be condemned without any evidence having been adduced against him; and, if the trial court fails in that duty, the appellate court must perform it. This is perfectly plain where no evidence at all has been adduced, or, in other words, where no part of the case, or none of the elements constituting the case, has been proved; but in principle there is. no difference between such a case and a case like the present, where there has been a total absence of evidence, not upon all the essential elements of the case, but only upon one of them. This will be made plain by an illustration. Let us suppose that in a ease of murder all the essentials of the case have been proved except the killing of a human being; or, to take a possible or less exaggerated illustration, let us suppose that in a case of burglary no evidence as to a breaking has been adduced; would it not be the plain duty of the trial court, or of the appellate court, to set aside the verdict whenever its attention was attracted to the situation? Plainly it would be. And the situation in the present case corresponds exactly with *787 this last illustration. On an essential element in the ease of the prosecution no evidence at all has been adduced; and therefore the accused has been condemned without any evidence having been adduced. He has been condemned on the assumption that it was for him to disprove the allegations of the information, not for the state to prove them.
Our former judgment in this case is therefore reinstated, and made the judgment of the court.
O’NIELL, J., is of the opinion that the plea of “prescription,” as it is called in R. S. 986, which is not “pleadable” against certain specified crimes, should be specially pleaded by the defendant and tried and decided by the judge, and that on the trial thereof the burden of proof should be upon the defendant urging the plea.