BOLIN, Judge.
This is a suit by Isa Phene Jennings, Columbus Price and Pearl Jennings, the three daughters of Christopher Columbus Brown and his wife, Ann Eliza Brown, against Robert F. Walker to have declared *731 as simulations certain deeds from their mother to their brother, Charles Ferrell Brown, of approximately 250 acres of land located in Claiborne Parish, Louisiana. They also seek to have declared as simulated a third deed from C. F. Brown to his daughter and, alternatively, to have the deeds declared to be donations in disguise. Defendant is the grandson of plaintiffs’ deceased brother, Charles Ferrell Brown. Subsequent to the initiation of suit Pearl Jennings died and.,her heirs were substituted. By amended petitions various mineral lessees were brought into the proceeding as defendants. From judgment in favor of plaintiffs, defendant, Robert F. Walker, and several lessees have appealed.
A chronological account of the events follows. The father, C. C. Brown, purchased the main portion of the land in litigation at a succession sale on March 29, 1880, for the sum of $211.38. At the time of purchase C. C. Brown was married to Ann Eliza and of this union five children were born. Otis A. Brown, one of the sons, died September 21, 1905, unmarried and without issue.
On November 8, 1880, C. C. Brown conveyed the property to Washington Bugg, the sale being made for the recited consideration of $800 payable in three annual promissory notes, two for $300 and one for $200. C. C. Brown died in 1884, survived by his widow and five minor children.
On December 26, 1889, Wash Bugg conveyed the mortgaged property to the widow, Mrs. Ann Eliza Brown, in exchange for his unpaid notes given to C. C. Brown for the purchase price, Mrs. Brown and the children moved on the property shortly thereafter and lived there together, farming the land until the daughters married and moved away and Otis died. Charles Ferrell Brown, the other son, remained on the property with his mother and continued farming activities. The testimony is to the effect that Charles Ferrell Brown married Mae Hanson prior to 1906 and in December of that year his mother, Mrs. Ann Eliza Brown, conveyed to him the farm on which they lived, comprised of the following described property:
N 54 of SW i/4 and SE 14 of NW 14 of Sec. 3, S 54 of SE 54 and NE 14 of SE 14 of Sec. 4, and the N 54 of NE 54 and SE 54 of NE 54 of Sec. 9, Township 23 North, Range 6 West, Claiborne Parish, Louisiana, containing 250 acres, more or less.
The deed recited that the sale and transfer “is made for and in consideration of the sum and price of six hundred dollars ($600.00) due and payable as follows: Cash $150.00 and the vendee’s 3 promissory notes” of $150 each payable on November 1 of the three succeeding years. This deed was passed before a notary public and two witnesses and was signed by Mrs. A. E. Brown and accepted by C. F. Brown, the vendee. Plaintiffs claim neither the cash nor the notes were ever paid. Nowhere in the deed is there an indication the vendee is the son of the vendor. The deed was recorded December 27, 1906. The following year C. F. Brown built a home for himself and his wife on the property a few hundred yards from the family home.
With the exception of the NE 54 of the NE 54 of Section 9, all the described lands had been severed from the public domain and on October 17, 1907, Ann Eliza Brown entered that portion and a patent issued in her name on May 3, 1913. Thereafter, on November 6, 1918, Mrs. Brown purported to re-convey the said forty acres to C. F. Brown for $100 cash, reserving, however, the following:
“Vendor retains possession and use of the above described land during her natural lifetime.”
The above mentioned forty acres had been included in the description of the property purportedly conveyed in the 1906 deed. On it was located the homeplace, where the mother continued to reside until her death in 1943. Both the 1906 deed and the 1918 deed are claimed to be simulations or *732 donations in disguise because of the alleged lack of consideration.
Prior to 1943 C. F. Brown executed several timber contracts and options and one oil and gas lease covering his individually owned lands and portions of the litigated lands. During these years the testimony reflects that, in addition to erecting a dwelling on the place, C. F. Brown built a barn and some houses for tenants who aided him in cultivating the land. There was, likewise, evidence that C. F. Brown performed the heavier labor connected with the smaller farming activities of his mother.
After his mother’s death Mr. Brown continued his uninterrupted control and possession of the farm and in 1956 his wife, Mae Hanson Brown, died intestate and her daughter, Ruth Brown Walker, only child of the couple was placed in possession of an undivided one-half interest in all of the litigated lands except two 40-acre tracts in Section 3. On October 30, 1962, C. F. Brown purported to convey certain of the property in litigation to Ruth for $100 and other valuable consideration. This deed formed the basis for plaintiffs’ third plea of simulation.
C. F. Brown died in 1963 and his daughter was placed in possession of his properties by judgment dated February 20, 1964, and amended on September 3, 1965. She thereafter executed two oil and gas leases covering portions of the litigated lands on November 18, 1964, and January 18, 1965.
A well was drilled and completed as a producer on the NE'J4 of NE 14 of Section 9 on February 6, 1963, and appellees claim they are entitled to an undivided three-fourths interest in all the oil, gas and minerals produced from the subject lands. (The well has been plugged and abandoned since trial of this suit).
Ruth Brown Walker died and her son, defendant-appellant Robert F. Walker, was placed in possession of her properties by judgment dated May 20, 1965, and amended September 29, 1965.
The case was tried on the merits April 14 and 15, 1966, and the lower court concluded the attacked deeds were simulations and ordered them struck from the conveyance records. It further ordered that the plaintiff sisters be given one-fourth interest each in the property in indivisión and the heirs of the deceased sister were declared owners of their ancestor’s one-fourth interest in indi-visión. The remaining one-fourth interest was given to defendant Robert F. Walker. The court further ordered all mineral leases cancelled from the records and that an accounting be rendered to plaintiffs of all income produced from subject lands for a period of ten years prior to the filing of this suit.
We consider the primary issue before this court to be the correctness vel non of the lower court’s judgment declaring the three deeds to be simulations and particularly the 1906 deed.
The testimony of the two sisters living at the time of the trial was, at most, negative. They both testified they considered C. F. Brown to be in charge of the farm; that he “ran” the place; that he lived on the property from the time they all moved on it until his death in 1963; they both knew he had demanded that his mother “turn the place over to him” although they were unaware of the actual execution of the deed; they knew he built his home on the property shortly after he married and took charge of the farm; neither of them saw him give any money to his mother in payment of the price although Mrs. Price testified her mother had $500 at her death which was used for her funeral.
Mrs. Christopher Columbus Price, one of the plaintiffs, became a widow in 1928, at which time she returned to the homeplace and purchased approximately 50 acres from C. F. Brown adjoining the property on which her mother lived. She stated she paid him cash for it and built a small house for herself and two sons. She spent much *733 of the time with her mother, particularly at night, during the years preceding her mother’s death, following which she returned to live on her own property. She testified she paid none of the taxes, received none of the income and had never made any demand on her brother for any part of the homeplace nor for any of the proceeds from timber or leases until this suit was instituted.
Mrs. Isa Phene Jennings’ testimony was even less positive with regard to any claim she may have considered she had to the homeplace. Since Mrs. Jennings was over eighty years of age and not in good health when this suit was commenced, plaintiffs took her deposition to perpetuate testimony and defendants did not cross-examine her at that time though they timely objected, on the ground it was hearsay, to her testifying as to what was said between Mrs. A. E. Brown and C. F. Brown at the time of the transfer of the property.
The pertinent portion of the deposition, which we hold admissible, is as follows :
Q. “Do you know of your own knowledge whether Ferrell ever gave your mother any money?
A. “If he did, she never told us; not a penny.
Q. “Do you know of your own knowledge whether Ferrell ever gave her anything ?
A. “No.”
The lower court gave great weight to this negative testimony and to the fact Mrs. A. E. Brown remained on the property, concluding defendants have failed to rebut the presumption the sale was simulated. It further concluded the possession of Charles Ferrell Brown was not “hostile” to his coheirs and, hence, he gained no title by prescription.
Appellants properly contend that once there is found to be present consideration, however small, there is no simulation. See Brown v. Brown (1878) 30 La.Ann. 966, wherein it was held that transferror’s notes for $600 constituted a real and valid consideration even though there was a recited cash consideration stating:
“When a contract, therefore, is attacked on the ground that the expressed consideration does not exist or that there was no consideration for it, the party may show other consideration than that expressed in the contract.”
See, also, Succession of Nelson, 224 La. 731, 70 So.2d 665 (1953) wherein the Supreme Court found that the presumption of simulation created by the possession of the vendor after a sale was rebutted by showing there was real and actual consideration, though perhaps inadequate, citing earlier cases.
Bolstering this premise is the holding in a number of cases that notes themselves are a sufficient consideration to support a transaction being attacked as a simulation. See Brown v. Brown, 30 La.Ann. 966 (1878) supra; Lawson v. Conolly, 51 La.Ann. 1753, 26 So. 612 (1899); Thigpen v. Thigpen, 231 La. 206, 91 So.2d 12; and Cahow v. Hughes, 169 So. 801 and 173 So. 471 (1937). In a rehearing granted in the last cited case, Cahow v. Hughes, the court, in holding there was no simulation or donation in disguise, had this to say:
“We too think that it [the proof] falls short of supporting the charge that the authentic act of sale which is attacked was executed as a mere subterfuge to disguise a donation by the plaintiff’s mother of the real estate therein conveyed to the defendant. On the contrary, the proof is that plaintiff’s mother wanted more for the property than defendant *734 was willing to pay, and it was after an hour’s discussion as to the price, that instead of insisting on her price of $900 she finally agreed to one of $800 and the use of a certain room in the dwelling house. Defendant’s testimony on this point is fully corroborated by that of the notary before whom the act was passed. The whole matter was attended to in the office of M. J. Allen, the deceased attorney already referred to, who was advising the parties because of the very provisions of the law now being invoked to set aside the act of sale and the notary appears to have been unusually careful in ascertaining that the transaction was not the one reprobated by that law. The consideration of $800 in the form of vendor’s lien and privilege notes, as expressed in the deed, was ample to support a sale of the property involved * * * ”
Plaintiffs’ principal attack on the 1906 deed from their mother to their brother is based on the presumptions raised by La.C.C. Arts. 2239, 2444 and 2480, and particularly Art. 2480, which provides :
“In all cases where the thing sold remains in the possession of the seller, because he has reserved to himself the usufruct, or retains possession by a precarious title, there is reason to presume that the sale is simulated, and with respect to third persons, the parties must produce proof that they are acting in good faith, and establish the reality of the sale.” (Emphasis added)
They further contend this presúmption is unrebutted and that defendants failed to prove payment of the recited consideration of $600.
Opposed to the presumptions relied upon by plaintiffs is the contrary presumption that the notes have been paid. As stated in Kuhn v. Bercher, 114 La. 602, 38 So. 468 (1905):
“The mortgage debts and the assumpsit in favor of the mortgage creditors have been prescribed for many years. The presumption of payment, which the law raises in case of prescription releasing from debt, is juris et de jure. Brown v. Union Ins. Co., 3 La.Ann. 177; Levistones v. Merigny, 13 La.Ann. 353; Hebert v. Chastant, 22 La.Ann. 152; Ferrand v. Bres’ Heirs, 35 La.Ann. 908.”
Plaintiffs have cited numerous cases supporting their position. In Freeman v. Woods (La.App. 2 Cir. 1941) 1 So.2d 134, the court held:
“The record does disclose that no cash payment attended any of the transfers in question; each was effected entirely on a credit basis, either through the giving of a note or notes or by the assumption of an existing indebtedness. But sales are often made in this manner, and they are nonetheless legal and valid, provided, of course, good faith surrounds their consummation. Significantly, in the deeds affecting the Gaddis property from Freeman to Dr. Brown, and from Dr. Brown to A. M. Woods, the only consideration expressed for each conveyance was the assumption by the grantee of the outstanding notes.
* * * * * *
“On the question of the retaining of possession of the property by the father, it appears that he, with the mother, lived on the west forty acres until his death in 1936, and cultivated it only to the extent of having a garden thereon. However, the entire 90 acres, with the exception of said garden patch, was farmed continuously by A. L. Woods, either pérsonally or through tenants, from 1932 until the commencement of this trial; and during that period, except for two years thereof, he lived either on the west forty with his parents or on the adjoining east forty.”
While the Freeman case, supra, parallels in many respects the instant case, the *735 court there found there was no simulation and the notes were valid consideration for the transfer, which was made in good faith and not for the purpose of defrauding creditors of the vendor father. The court commented on the fact the case presented an unusual and unfortunate situation in that the mother, who had remarried since the father’s death and moved from the property, testified that all of the transactions were shams; however, it was stated her testimony, in the main, was based on conclusions or opinions that she had reached. In holding the conveyance was not a sham or simulation the court apparently relied on the validity of the notes as consideration and on the continuous occupancy of the farm by the purchasing son, rather than on the opinion testimony of the mother.
King v. Atkins (1881) 33 La.Ann. 1057, involved the transfer by the administratrix to her brother of property belonging to the succession of her deceased husband. The court held the failure of both the adminis-tratrix and her brother, the transferree, to testify as to the actual payment of the price left the court with nothing but the paper title, the verity and reality of which were the questions in controversy, which might have been and were not settled on the simple oaths of defendants themselves. As a consequence it was determined the transfer was a simulation.
The factual distinctions between the King case and the instant one are many, the principal one being that here plaintiffs, co-heirs out of possession, waited at least 59 years after the 1906 deed and 22 years after the death of their mother before making any claim to the property. No parties to the transfer were living at the time this suit was instituted so that no presumption arises in plaintiffs’ favor from their failure to testify.
In Johnston v. Bearden, 127 So.2d 319 (La.App. 2 Cir. 1961-cert. den.) the court found, under strongly suspicious circumstances, that sale of property by a mother to her daughter and son-in-law was simulated. There the vendees borrowed money from the bank, paid it over to the mother upon completion of the act of sale and the money admittedly was turned over to vendee’s daughter, whose husband paid off the note evidencing the loan from the bank. Additionally, the sale was made approximately three months after the vendor had been living with her daughter and son-in-law and within six months of her death. No such suspicious circumstances appear in the instant case.
The fact that Mrs. Brown continued to live on a small part of the property is not material under the facts as shown here. In Joiner v. Ruark, 174 La. 615, 141 So. 76 (1932) the Louisiana Supreme Court rejected a plea of simulation holding:
“ * * * The fact that the contract is one between parent and child may cause it to be regarded with suspicion, but it does not follow that the contract for that reason should be deemed simulated or fraudulent. St. Avid v. Weimprender’s Syndics, 9 Mart. (O.S.) 648; Ham v. Herriman, 1 Mart. (N.S.) 535; Maurin & Co. v. Rouquer, 19 La. 594; Kemp v. Kemp, 144 La. 671, 81 So. 221. The fact that Mrs. Ruark remained on the property with her daughter after the transfer does not show that delivery was not made, and, under the circumstances, does not create a strong presumption of simulation. The deed was one by public act. Delivery is deemed to have followed it. Civ.Code, art. 2479. As Mrs. Ruark and her daughter were living together on the property at the time of the transfer, we fail to see how a more effective delivery could have been made, unless it be held, which would be unwarranted, that Mrs. Ruark should have left the place. Any presumption of simulation that might have arisen, under article 2480 of the Civil Code, from the fact that Mrs. Ruark continued to remain on the property *736 after the transfer, is fully overcome, not only by the natural desire of the mother and daughter to continue to live together, but by the entire record * * * ”
(See also: Eureka Homestead Soc. v. Baccich, 190 La. 494, 182 So. 653 (1938); Succession of Rolling, 127 So.2d 292 (1961).
We think testimony of plaintiffs’ own witnesses negates any intention on the part of Mrs. A. E. Brown to donate the property to C. F. Brown. Mrs. Jennings testified that, when Ferrell took charge of the property, it was understood he was to “take care of” their mother. The fact that Mrs. Brown continued to farm a small area immediately around her house where she kept chickens and a cow and turned over the remainder of the property to C. F. Brown, who had exclusive control over it, indicates to us the transaction between Mrs. Brown and her son was an “arm’s length” sale. We find Mrs. Brown intended to sell the property to her son for some cash, his notes and his promise to remain on the property. It is not denied he made sufficient income from the timber sales and farming operations on the larger area to pay off his notes given to his mother.
Since the 1918 deed was of property which had already been conveyed in 1906, we conclude it evidenced only the intention of C. F. Brown to insure his mother the usufruct of the forty acres there involved for her lifetime.
In conclusion we find that the 1906 sale from Mrs. Ann Eliza Brown to her son, Charles Ferrell Brown, was made by notarial act; that the consideration therein expressed is presumed to have been paid; that the sale was made for the benefit of the mother and not in an attempt to circumvent the rights of forced heirs; that whatever presumption which may have arisen by reason of the sale by the mother to the son, under Art. 2444 of the Louisiana Civil Code is rebutted by all the circumstances reflected in the record. We find the 1906 sale to be neither a simulation nor a donation in disguise. Since all claims of plaintiffs rest upon the invalidity of the 1906 deed, our holding eliminates the basis and substance of plaintiffs’ related demands.
Accordingly, the judgment of the lower court is reversed and set aside and plaintiffs’ demands are rejected at their cost, and particularly as they affect the following described property:
N of SW :>4 and SE i/4 of NW *4 of Sec. 3, S .1^ of SE % and NE i/4 of SE l/4 of Sec. 4, and the N 1/2 of NE '14 and SE 14 of NE )4 °f Sec. 9, Township 23 North, Range 6 West, Claiborne Parish, Louisiana, containing 250 acres, more or less.
Reversed and set aside.
PER CURIAM
In their application for rehearing plaintiffs claim this court erred in failing to give consideration to their alternative plea that the instrument dated December 26, 1889, was actually a dissolution rather than a sale.
In the chronological account of the events set forth in our opinion we stated: “On December 26, 1889, Wash Bugg conveyed the mortgaged property to the widow * * * ”. By these words we intended to hold that the instrument was what it appeared to be, i. e., a sale and not a dissolution of a prior sale.
The application for rehearing is denied.