182 So. 653

EUREKA HOMESTEAD SOC. v. BACCICH.

No. 34721.

May 30, 1938.

Rehearing Denied June 27, 1938.

McCloskey & Benedict and W. Sommer Benedict, all of New Orleans, for appellant.

Prowell & McBride, of New Orleans, for appellee.

LAND, Justice.

On February 24, 1926, by notarial act, Michael A. Baccich, at that time a widower, sold to his daughter, Eunice Baccich, femme sole, of age, Lots 9 and 10, in the Sixth District of the City of New Orleans, in Square 396, with all the buildings and improvements thereon for a purported consideration of $8,500 cash. This act of sale was registered in the Conveyance Office for the Parish of Orleans February 25, 1926.

On January 27, 1932, six years later, Eureka Homestead Society obtained judg-

ment for the sum of $8,663.05, subject to a credit of $6,500, in the Civil District Court for the Parish of Orleans against Jacques Kauff D'Avricourt and Michael A. Baccich, in solido, on a mortgage note for $10,000 of date June 22, 1927, which Michael A. Baccich had assumed in a sale of property to him by D'Avricourt on February 1, 1928.

On September 24, 1936, or nine years and six months after the date of the sale by Baccich to his daughter, Eureka Homestead Society brought the present suit to have this sale declared a simulation, and to have the property included in the sale returned to and administered in the Succession of Michael A. Baccich, who died in the City of New Orleans December 12, 1935, and whose succession had not been opened.

Defendant in her answer denies that the sale to her by her father was a simulation. She avers that the consideration of $8,500 as expressed in the act of sale was not the true consideration, but that other considerations formed the basis of the sale, among which was that her father was to be supported and cared for by defendant during the remainder of his life; and that all the considerations for which defendant was obligated, for the transfer of the property, were discharged by her in full.

Defendant also claims damages in reconvention against plaintiff in the sum of $10,000, for infringement upon her rights by the alleged illegal and unlawful registration by plaintiff in the Conveyance Office for the Parish of Orleans of a notice of lis pendens.

Judgment was rendered in the lower court dismissing plaintiff's suit at its costs, and rejecting defendant's reconventional demand against plaintiff.

The plaintiff, Eureka Homestead Society, has appealed from this judgment, and defendant has answered the appeal, praying that the judgment be so amended as to allow her reconventional demand for damages, and, as amended, that the judgment be affirmed.

█ (1) As there is no evidence in the record as to any damages sustained by defendant, her reconventional demand was properly rejected in the court below.

█ (2) This is not a revocatory action. The Eureka Homestead Society was not even a creditor of decedent, Michael A. Baccich, when the property in dispute was transferred by him to his daughter. Besides, the only prayer of plaintiff is for judgment declaring the sale a simulation.

The plaintiff has signally failed to prove that the sale of the property involved in this case is a simulation.

The only witness upon which plaintiff relies in the case is the vendee, the daughter of Baccich, who was called on cross-examination by plaintiff. From her, plaintiff elicited the admission that, after purchasing the property from her father, she permitted him to live with her. It was a part of the consideration of the sale that plaintiff should support and care for her father the rest of his life. Besides, the property purchased by defendant was the family home, in which the father lived at the time of the transfer, and for ten years after the death of his wife.

In Joiner v. Ruark, 174 La. 615, 141 So. 76, this Court said, at page 619, 141 So. at page 77:

"The fact that Mrs. Ruark remained on the property with her daughter after the transfer does not show that delivery was not made, and, under the circumstances, does not create a strong presumption of simulation. The deed was one by public act. Delivery is deemed to have followed it. Civ.Code, Art. 2479. As Mrs. Ruark and her daughter were living together on the property at the time of the transfer, we fail to see how a more effective delivery could have been made, unless it be held, which would be unwarranted, that Mrs. Ruark should have left the place. Any presumption of simulation that might have arisen, under article 2480 of the Civil Code, from the fact that Mrs. Ruark continued to remain on the property after the transfer, is fully overcome, not only by the natural desire of the mother and daughter to continue to live together, but by the entire record. In our view, the transfer was not a simulation."

The deed was one by public act in the case at bar. The mother had died in 1925, and the father was living with defendant, his daughter, at that time, and in 1926 when the transfer was made to her. The father continued to live with his daughter until his death in 1935. Under the circumstances, there was a natural desire of the father and daughter to continue to live together, besides there was a legal obligation

upon her part to support and take care of him as long as he lived.

(3) Now as to the considerations of the sale.

Defendant, Eunice Baccich, testifies that the true and correct consideration was not $8,500, but that the cash consideration paid by her was $1,000 from her own individual funds; that her father arranged the details of the sale; and, at the time, requested $1,000 in cash from her, which she paid.

The testimony shows that defendant made upward of $500 per year, never having earned less than that amount. She further testified that she took in boarders and received over $100 per month from them.

It is not difficult to suppose, therefore, that having an income of more than $1,700 per year for several years, she might possess $1,000 in cash. The trial Judge believed the witness. There is no testimony in the record to contradict her statements, and we do not find any good reason for not accepting them, although counsel for plaintiff would have them discredited.

(4) The testimony of defendant also shows that her father was in failing health about the time of the sale. She states that, as another consideration for the transfer to her, she agreed to give her father a home and nurse him for the balance of her life. She testifies that she performed this part of her obligation, and took care of her father up to the time of his death, acting during his illness as his nurse.

Defendant's mother died intestate June 27, 1925, leaving four married children:

Lydia, married to J. L. Lemarie, Jr.; Euxenia, married to G. H. Rathe; Hilda, married to S. M. Lemarie; George, married to Louisa Dickson; and the three unmarried children were the defendant, Eunice, and Ida, and Anna. T. p. 33.

When defendant's mother died, she left also her undivided interest in the community, which was renounced by all of her heirs in favor of their father by notarial act of date July 6, 1925.

At the time the act of renunciation was executed by the children, it was understood that the father was to take care of the three unmarried children by selling them the house in consideration of their renouncing their mother's succession in his favor. T. p. 34.

After the death of their mother, the following undated letter was found:

"If anything should happen to me? I beg all of my children not to forget my special wish:

"peace and harmony between them *always* & at all times,—& love & respect for their father,—remembering always that he has always been the very best of fathers to them,—Let him decide upon the division of property between them,—My jewelry & personal effects to be amicably divided, —the *unmarried daughters to be specially provided for,*—& do not forget the little grandchildren,—a little souvenir to each, Be Good,—& love one another,—take good care of Papa & George and one of the other

"Love Mamma". **T. p. 7.** (Italics ours).

Shortly after their mother's death, in pursuance of this letter, several family meetings were held, all of the sisters and the brother of defendant being present. It was agreed that the father was to have a home with defendant. T. p. 27. After the sale, he had the same bedroom he had always occupied, and his method of living went on substantially the same as it had before the sale.

There also lived in the house, the sister of defendant, Anna, who is now married, and is in New York, and her sister Ida, who is still living with defendant, who took care of all of the expenses. T. 28, 29.

The full consideration of the sale was that the father was to spend the rest of his life with defendant; the $1,000 in cash paid by defendant; and the property the children transferred to their father in their mother's estate. T. 29. The net half interest in the community of the mother of the children was one-half of about $16,000, and the purported consideration of the sale is $8,500.

Some months after the death of their mother, their father, who had been sent into possession of all of the property of his wife by virtue of the renunciation in his favor by the children (T. 51 et seq.), transferred the family home to Eunice Baccich, who was to hold the same for her own account and for her two unmarried sisters. Defendant testified that although the property stands in her name, she considers that her two sisters have an equal interest with her in the property. T. 36.

In other words, the children obeyed the dying request of their mother, made in her last letter addressed to them. Not one of the heirs testified in the case against defendant; and, although the sale to her by her father was made in the year 1926, or twelve years ago, not one of the heirs have attacked or questioned its validity in any respect, thereby fully corroborating the testimony given by defendant on the trial of this case.

(5) "A simulated sale of a thing results when parties pass a formal act of sale of the thing, for which no price is given, nor intended to be given." Keller v. Blanchard, 19 La.Ann. 53.

"When an actual consideration, no matter how inadequate, has been paid by the purchaser in an alleged sale, the transaction is not a simulated one." Brown v. Brown, 30 La.Ann. 966.

"Where there is some consideration paid for transfer alleged to be in fraud of creditors, although inadequate, a transfer cannot be annulled as a simulation." Harman v. Defatta, 182 La. 463, 162 So. 44.

Had the defendant paid nothing more than the $1,000 cash in this case, the sale would not have been a simulation.

But when defendant's father died in the year 1935 at the age of 76 years, in the home of defendant, all of the considerations for which defendant was obligated were discharged by her in full, and her title to the property became perfected in that year.

Plaintiff did not bring this suit until September 24, 1936, nearly ten years after the sale of the home to defendant by her father. Plaintiff was not a creditor of de-

fendant's father at the date of the sale of the property by him to defendant in 1926. Nor was plaintiff a creditor of the defendant, Eunice Baccich, when about four years after the sale, she placed a mortgage on the property for $6,500 to assist her father financially in his business. This loan has nothing to do with the validity of the sale.

Judgment affirmed.

O'NIELL, C. J., does not take part.

On Application for Rehearing.

PER CURIAM.

In the concluding paragraph of the opinion in this case, it is said: "Plaintiff was not a creditor of defendant's father at the date of the sale of the property by him to defendant in 1926. Nor was plaintiff a creditor of defendant, Eunice Baccich, when about four years after the sale, she placed a mortgage on the property for $6500.00 to assist her father financially in his business."

In its application for rehearing, plaintiff contends that this language overrules indirectly Ideal Savings & Homestead Association v. Gould, 163 La. 442, 112 So. 40, in which it was held that whether a creditor's claim accrued before or after the passing of the simulated deed by the debtor is immaterial as respects his right to seize the property.

The only prayer of plaintiff is for judgment declaring the sale a simulation. There is no issue raised by the pleadings as to the right of plaintiff to bring such suit, whether a creditor, or not a creditor,

at the time the sale is attacked as a simulation.

This Court had not the slightest intention of overruling Ideal Savings & Homestead Association v. Gould, but used the above language merely to show the good faith of the parties in entering into these various transactions.

The judgment rendered on original hearing is correct, and plaintiff's application for rehearing is overruled.