W.L. Freeman, the holder of a moneyed judgment against A.M. Woods, deceased, brought this suit against the surviving widow and heirs of decedent for the primary purpose and with the ultimate view of obtaining satisfaction of said judgment.
The cause was tried on the issues created by the pleadings, the detailing of which is unnecessary here, and the district court rejected the demands of plaintiff and ordered his suit dismissed. Written reasons for the decision were assigned.
This appeal is being prosecuted by plaintiff.
It appears from the briefs of counsel that the only question before this court is whether or not the deeds under which one of the defendants, A.L. Woods, holds certain lands, should be declared simulations.
The record discloses that on December 18, 1928, P.M. Gaddis sold to the said W.L. Freeman a tract of land, which we shall hereinafter refer to as the Gaddis property, and received as part of the price therefor five notes of the purchaser, in the amount of $256.60 each, secured by a vendor's lien and mortgage. On the following day Freeman conveyed the tract to Dr. J.B. Brown, the only consideration being an agreement to assume payment of said notes. Dr. Brown transferred it on March 9, 1929, to A.M. Woods, the above mentioned decedent, who made no cash payment but agreed to an assumption of the described notes.
P.M. Gaddis commenced the foreclosure of the mortgage and vendor's lien on August 5, 1932, resorting to ordinary process, to collect the balance due on the notes which he held; and on October 20, 1932, he obtained a solidary judgment against W.L. Freeman, the maker of the notes, and Dr. J.B. Brown and A.M. Woods, who had assumed payment of them in the respective transfers. The judgment was for $1,283, with interest and attorney's fees, less certain credits, and it ordered the seizure and sale of the mortgaged property and that the proceeds realized therefrom be credited on the judgment.
At a sheriff's sale subsequently held the property was sold, without the benefit of appraisement, to the last and highest bidder, who was P.M. Gaddis, the foreclosing creditor. The amount of the bid was not sufficient to satisfy the indebtedness, and a deficiency judgment, similar to those reprobated by the Legislature of 1934 through the enactment of Act No. 28, resulted against said solidary obligors.
On December 12, 1936, W.L. Freeman, for a valid consideration, obtained an assignment of the deficiency judgment from Gaddis, and was subrogated to the rights of that creditor to proceed against his co-debtors named therein, Dr. J.B. Brown and A.M. Woods. It is this judgment that is sought to be enforced through the instant proceedings.
In addition to the Gaddis property, which is of no further importance herein, A.M. Woods owned two forty acre tracts adjoining each other, hereinafter referred to as the east and west forties, and also an undivided one-sixteenth interest in a 160-acre tract. All of these lands are now held by his son, A.L. Woods; and the deeds in the chain of title from the father to the said son are the ones that plaintiff seeks to have declared simulated.
The father on January 7, 1931, or almost nineteen months before the commencement of the aforementioned foreclosure proceedings, conveyed the east forty to another son, M.M. Woods. The deed recited a consideration of $800, payable in five yearly mortgage notes of $160 each, the first of which was due October 1, 1931. The grantee, with his wife, had lived on and farmed this tract under a rental agreement during the two previous years, and he continued there until December 6, 1932, when he deeded it to A.L. Woods who assumed payment of the outstanding notes.
On January 9, 1932, the said A.L. Woods received a deed from the father affecting the west forty. $800 was the consideration recited therein, payable in four yearly mortgage notes of $200 each, beginning November 1, 1932.
Under date of June 30, 1932, another deed was executed by the father to A.L. *Page 136 
Woods, this covering the above mentioned undivided one-sixteenth interest in the 160-acre tract. For it, the grantee gave one mortgage note of $150 due November 1, 1932. Under a partition deed executed October 24, 1934, with his co-owner, A.L. Woods received the north ten acres of such tract as his interest.
The entire 90 acres, being the east and west forties and the partitioned ten acres, were transferred by A.L. Woods to his brother Tyra Estes Woods under a deed of date October 9, 1934. One mortgage note for $1,750 due October 9, 1935, was given in consideration of this transfer; and it was substituted for the previously executed and outstanding notes held by the father totaling the named amount. The father later used this note as collateral security for payment of an indebtedness of $198.19 with Mr. T.W. Hardee, a merchant of Pleasant Hill, Louisiana.
Tyra Estes Woods, on May 29, 1936, reconveyed the 90 acres of land to A.L. Woods, and for the transfer the latter assumed the payment of the $1,750 mortgage note.
Subsequently, A.L. Woods paid to T.W. Hardee the sum of $220 in settlement of his father's indebtedness of $198.19, plus accrued interest, and was given the $1,750 note that had served as collateral security therefor.
"A simulation is a feigned, pretended act; one which assumes the appearance without the reality. Being entirely without effect, it is held not to have existed, and, for that reason, it may be disregarded or attacked collaterally by any interested person." Houghton et al. v. Houghton et al., 165 La. 1019,116 So. 493, 495. In urging the applicability of this doctrine to the several transactions through which A.L. Woods now holds title to the 90 acres of land, plaintiff contends that according to the evidence no payment of a consideration therefor was made at any time; that the $220 used in satisfying the indebtedness with T.W. Hardee were funds really belonging to the father; and that the father, together with the mother, remained on the property after parting with title thereto.
The record does disclose that no cash payment attended any of the transfers in question; each was effected entirely on a credit basis, either through the giving of a note or notes or by the assumption of an existing indebtedness. But sales are often made in this manner, and they are nonetheless legal and valid, provided, of course, good faith surrounds their consummation. Significantly, in the deeds affecting the Gaddis property from Freeman to Dr. Brown, and from Dr. Brown to A.M. Woods, the only consideration expressed for each conveyance was the assumption by the grantee of the outstanding notes.
The $220 given to Mr. Hardee seems to have been the only money paid in connection with any of the transactions, except perhaps certain interest payments claimed to have been made by M.M. Woods. As to whether or not it was a bona fide payment by A.L. Woods, the testimony is conflicting. The trial judge, as his written opinion discloses, found as a fact that A.L. Woods actually owned the funds. The evidence seems to support this finding. Being an actual and bona fide payment, although perhaps inadequate in amount, it provides protection to the titles involved from an action to declare them simulated. Harman v. Defatta et al., 182 La. 463, 162 So. 44; Citizens Bank Trust Company v. Willis et al., 183 La. 127, 162 So. 822.
On the question of the retaining of possession of the property by the father, it appears that he, with the mother, lived on the west forty acres until his death in 1936, and cultivated it only to the extent of having a garden thereon. However, the entire 90 acres, with the exception of said garden patch, was farmed continuously by A.L. Woods, either personally or through tenants, from 1932 until the commencement of this trial; and during that period, except for two years thereof, he lived either on the west forty with his parents or on the adjoining east forty.
The case presents an unusual and unfortunate situation. On the one side we find the mother, who remarried since the father's death and moved from the property, testifying that all of the transactions were shams; however, her testimony, in the main, furnishes conclusions or opinions that she had reached. The children, M.M. and A.L. Woods on the other hand, insist that the transfers were entered into in all good faith and that they purchased the property with the view and purpose of establishing their homes thereon. The trial judge resolved this conflict in favor of the children, remarking:
"The Court observed closely the demeanor of M.M. Woods and A.L. Woods while they were on the stand testifying and I was unable to detect in any of their testimony *Page 137 
anything which would lead me to believe they were covering up any wrongful act of their own or of their deceased father's. I was convinced that the two young men were telling the truth, and that they had purchased the property in good faith."
Also there was taken into consideration, in reaching the decision appealed from, the testimony of Mr. T.W. Hardee. This was to the effect that in his many business dealings with A.M. Woods, extending over a period of about thirty years, he knew of no attempt by the latter, who had a good reputation for truthfulness and honesty, to defraud anyone.
The evidence in the record is not so satisfactory as it might be; but we cannot say, after our thorough study of it, that manifest error was committed by the district court in holding that the assailed transfers were not executed for the purpose of defrauding the creditors of A.M. Woods.
The judgment, therefore, is affirmed.