MOISE, Justice.
 

 Plaintiffs, Mrs. Eleanor Nelson, wife of Lewis Dunbar, and Mrs. Ethelbert Nelson, wife of Edward Ott, daughters of the marriage of Albert James Nelson and Ethel Hill Lander, deceased, interposed this litigation in the successions of their parents. They seek to have set aside.an act of sale and a dation en paiement which they allege are fraudulent simulations. After a trial on the merits, the trial court rendered judgment sustaining exceptions of prescription of four and ten years. The plaintiffs liave appealed.
 

 ■ The act of sale is dated September 11, 1930 wherein Robert Wiegand purchased-from Albert J. Nelson a certain lot of. ground with all improvements, being known as Municipal Number 428 Lowerline St., New Orleans, Louisiana. The recited consideration was $10,000. The act mentions an encumbrance on the property by. way of a mortgage of $15,000 in favor of Mrs. J. N. Schwing.
 

 The evidence discloses that Mr. Wiegand was not a blood relation of the Nelsons, but was their son-in-law, and at the- time of the sale, the mental anguish of Mr. Nelson’s absolute helplessness was worse than any physical act of pain because of the dire, circumstances in which he was placed. He had pending about twelve criminal charges in the District Court. It is possible that
 
 *738
 
 his creditors were dogging his footsteps and knocking at his door for payment of alleged civil obligations. No doubt, he wanted to place his property beyond the reach of his creditors. Mr. Wiegand was the only one who would and could financially help him. The other actors, at that time, were to a degree dependent on Wiegand.
 

 The reality of the transactions is the crux of the situation. If the sale is simulated, that is, without any consideration, the forced heirs’ right to proceed accrued after their parents’ death. In about 1935, Mr. Nelson was successful in having the criminal charges and suits dismissed in both the criminal and civil courts.
 

 Mr. Wiegand’s deceased mother had in her succession a $5,000 note made by Mr. Nelson.. This note was secured by another collateral note in the sum of $15,000 which in turn was secured by a mortgage on the .property, No. 428 Lowerline St., New Orleans, La. Mr. Wiegand paid his brothers their part of the note and assumed the liability. The note itself was never erased from the public records, but the $15,-000 collateral note was cancelled. This transaction unquestionably constituted a payment of $5,000 of the recited consideration of $10,000, the purchase price of the Lowerline St. property.
 

 The record shows that Mr. Nelson did not know- at the time of the sale what .the outcome would be with respect to the numerous charges and law suits filed against him, and he requested Mr. .Wiegand, his son-in-law, to retain the $5,000 balance due on the Lowerline St. property to pay a legal fee which might become due and to maintain a roof over his wife and children’s heads.
 

 Many issues, inconsistencies and contradictions will be ; found in the voluminous record. To obtain a correct solution, we employ the methods used by Inspector Chafik, the Arabian detective of fiction. He likens the Solution of a law suit to the weaving of. a design. Each fact like'the threads in the weaver’s hand must fit in the proper place in the' pattern, and the false premise, like an alien 'thread, must be discarded, and only when the design is complete to the last illusive thread, and a pattern can be received as a whole is a true solution possible. The district judge properly ordered a trial on the merits.
 

 The adequacy of the consideration paid is a false premise, and, like an alien thread must be discarded because the deceased alone has a right to proceed on that ground
 

 Article 1861 of the LSA-Civil Code reads:
 

 “2. In sales of immovable property, the vendor may be relieved, if the price given is less than one-half of the value of the thing sold; but the sale can not be invalidated for lesion to the injury of the purchaser.”
 

 
 *740
 
 Article 1876 of the LSA-Civil' Code prescribes :
 

 “Actions for lesion are limited to four years, to date from the time of the contract between the persons of full age, and from the age of majority in contracts of minors.”
 

 Article 2595 of the LSA-Civil Code states:
 

 “Actions for recission (rescission) of sales on account of lesion beyond moiety must be commenced within four years. These four years, with respect to minors, begin only from the day they become of age. With respect to persons of full age, they begin from the day of the sale.”
 

 A discussion of the balance of the purchase price is not necessary because both parents lived more than ten years after the passing of the act of sale and the dation en paiement took place, and the forced heirs are precluded by law from urging this contention. Mr. Nelson, the vendor, and Mrs. Nelson, the payor in the dation en paiement, had four years' to attack their acts for lesion. If they did not take such action timely, they were bound by their contracts, and so are their forced heirs. There is filed in this record an account showing how the remaining $5,000 due on the Lowerline St. property was spent by Mr. Wiegand. Any comment on the accuracy of that document is not necessary for a proper solution of this case. Dura lex, sed lex. ' The Jaw is hard,, but such .is the law. .Henriques v. Vaccaro, 220 La. 216, 56 So.2d 236.
 

 The dation en paiement is dated August 8, 1931. It recites that Robert Wiegand is a holder of a promissory note in the amount of $3,575 made by Mrs. Ethel Hill Lander, wife of Albert J. Nelson, secured by a mortgage on Mrs. Nelson’s paraphernal property, with accrued interest of $238.33, due within sixty days. The act further recites that Mrs. Nelson is indebted to Mr. Wiegand in the sum of $4,781.51, various amounts loaned and advanced to her at different times, the entire sum being $8,594.84, and in payment of. these obligations, she transfers to Mr. Wiegand a certain tract of land described as follows:
 

 “A certain tract of land, with all the buildings and improvements thereon, and the right of batture in front (if any there is), situated in the Parish of Jefferson, right bank of the River Mississippi, opposite the City of Carroll-ton, measuring three arpents and three feet front on said River, by Eighty arpents in depth, bounded by the property of Le Breton D’Orgenois Deschappelles, and below by property of Mr. Quinette.”
 

 The plaintiffs contend that at the time Mrs. Nelson made the dation en paiement, there was a definite promise on the part of Mr. Wiegand to return to her the separate and paraphernal property, which was known as “Nine Mile Point.”
 

 
 *742
 
 Here again is another alien thread that is not necessary for a solution of this case. There is neither a counter letter nor anything in writing which expresses an obligation so to do. Such an agreement cannot be proven by parol evidence except where there was- no consideration, and the sale was simulated.
 

 Mr. Nelson permitted more than ten years to elapse from the time of the transfer of the Lowerline St. property to Mr. Wiegand without taking any action, and Mrs. Nelson likewise permitted ten years to elapse from the date of the dation en paiement without taking action. They were therefore precluded from attacking by way of nullity or rescission the instruments herein involved.
 

 Article 2221 of the LSA—Civil Code reads:
 

 “In all cases, in which the action of nullity or of rescission of an agreement, is not limited to a shorter period by (a) particular law, that action may be brought within ten years.”
 

 • Article 2239 of the LSA-Civil Code provides :
 

 “Counter letters can have no effect against creditors or bona fide purchasers; they are valid as to all others; but forced heirs shall have the same right to annul absolutely and by parol evidence the. simulated contracts of those from whom they inherit, and shall not be restricted to the legitimate (legitime).”
 

 Thus, we see that children have the right under certain prescribed circumstances of attacking transfers made by their parents as being fraudulent simulations. Both transactions here have been shown to have been for a substantial consideration. We do not understand the law to be that upon a man’s death his forced heirs can inquire into the sufficiency of the consideration which he might have received for the sale of property or into the wisdom of certain contracts which he might have made.
 

 “The possession of the vendor after the sale creates, as to third persons, a presumption of simulation, •unless the verity of the transaction be shown. [LSA] C.C. 2480, 1921. That presumption has been rebutted in this case by showing that there was a consideration, perhaps inadequate, yet real and actual.” Brown v. Brown, 30 La. Ann. 966.
 

 “A simulated sale of a thing results when parties pass a formal act of sale of the thing, for which no price is given, nor intended to be given.” Keller v. Blanchard, 19 La. Ann. 53.
 

 ■ “ * * * Being an actual and bona fide payment, although perhaps inadequate in amount, it provides protection
 
 *744
 
 to the titles involved from an action to declare them simulated.” Freeman v. Woods, La.App., 1 So.2d 134, 136.
 

 “It is the well-settled jurisprudence of this state that when the actual consideration, no matter how inadequate, has been paid by the purchaser in an alleged sale, the transaction is not a simulated sale.” Citizens’ Bank & Trust Co. v. Willis, 183 La. 127, 162 So. 822, 824.
 

 “* . * # inasmuch as there was some consideration paid, although inadequate, the transfer cannot be annulled as a simulation. * * *
 

 “This transaction, according to the testimony of defendants, was not. a simulation, but a dation en paiement, which ‘is an act by which a debtor gives a thing to the creditor, who is .willing to receive it, in payment of a sum which is due.’ [LSA] Civ.Code, art. 2655. But an insolvent debtor is forbidden to give in payment to one creditor to the prejudice of the others any other thing than the sum of money due ([LSA] Civ.Code, art. 2658), and the law gives to every injured creditor an action to annul any contract made in fraud of his rights. Civ. Code, art. 1970.” Harman v. Defatta, 182 La. 463, 162 So. 44, 46. See also, Eureka Homestead Soc. v. Baccich, 190 La. 494, 182 So. 653; Bank of Abbeville
 
 &
 
 Trust Co. v. Lyons, 185 La. 117, 168 So. 513; Sere v. Darby, 118 La. 619, 43 So. 255.
 

 Another false premise, which like an alien thread, must be discarded is the contention of plaintiffs to the applicability of Article 2444 of the LSA-Civil Code which provides that the sales made by parents to their children, may be attacked by the forced heirs, as containing a donation in disguise, if the latter can prove that the price was below one-fourth of the real value of the property. It is contended that Mr. Robert Wiegand was .a party interposed for his wife, Aline Glendora Nelson. Plaintiffs have also prayed for collation.
 

 We do not see how the above article, 2444 of the LSA-Civil Code, has any application to the case at: bar. Mr. Wiegand is not a son of Mr. and Mrs. Nelson, and a sale to him for an inadequate price would have given rise to an action to set the same aside for lesion, and such-action, as we have shown supra, is barred by .a -lapse of four years, or to an attack of nullity or rescission .of agreements, which action is barred after ten years.
 

 - The testimony is conclusive that the transactions herein involved were made at the instance of Mr. Wiegand, and even though there is some evidence to show that he might have discussed them with Mrs. Wiegand, he nevertheless was not a party interposed.
 

 • Collation is the bringing back to the succession a sum received by the
 
 *746
 
 heir. Succession of Gomez, 223 La. 859, 67 So.2d 156. Mr. Wiegand is not an heir. He has no legitime in the succession. He is not even a blood relation. The money used as a consideration was from funds which he inherited from his parents. Therefore, neither collation nor Article 2444 of the LSA-Civil Code can apply because in law he is a stranger to the Successions of Albert James Nelson and Mrs. Ethel Hill Lander Nelson.
 

 In Scurto v. Le Blanc, 191 La. 136, 184 So. 567, 570, we said:
 

 “It is also the general rule of our jurisprudence that the verity and reality of authentic sales of immovable property can be assailed only in two ways: First, by means of a counter letter; second, by the answers of the other party to interrogatories on facts and articles, which stand in lieu of and are equivalent to a counter letter.”
 

 In Eberle v. Eberle, 161 La. 313, 108 So. 549, 551, we further stated:
 

 “For a forced heir to avail himself of this article it ought to appear that the property belonged to his ancestor by some title recognized by law, such, for instance, as by act of sale, or by inheritance, or by prescription, and that his ancestor thereafter apparently transferred the property to another, or made some other simulated contract with reference to it. It is the transfer or contract, made by the ancestor, as owner of the property, that his forced heir may attack as simulated, and show the simulation by parol evidence. In other words, a forced heir may attack by parol a transfer made by his ancestor, for the purpose of showing that it was a simulation, in order to bring the property back into his ancestor’s succession or to recover it for himself, but he cannot use parol evidence to bring into the succession or recover property, which under no form of title recognized by law ever belonged to his ancestor or to his ancestor’s succession.” See also, Lawrence v. Claiborne, 215 La. 785, 41 So.2d 680.
 

 As to the charge of fraud, such charges are never presumed. They must be proven. Belcher v. Booth, 164 La. 514, 114 So. 116; Aucoin v. Marcel, La.App., 38 So.2d 81; Strauss v. Ins. Co. of North America, 157 La. 661, 102 So. 861; American Guaranty Co. v. Sunset Realty & Planting Co., 208 La. 772, 23 So.2d 409; Sanders v. Sanders, 222 La. 233, 62 So.2d 284.
 

 We have read the voluminous record, and we have evaluated the testimony and find that Wiegand did' not commit fraud. The transactions were questionable as to value and were advantageous to Mr. Wiegand, but consideration was paid, and the Nelsons themselves never directly sought to set aside either the act of sale or the dation en paiement.
 

 For the reasons assigned, the judgment is affirmed at plaintiffs’ cost: