W. A. CULPEPPER, Judge ad hoc.
The plaintiff, Joseph Edmond Quinette, filed suit on May 27, 1952 to annul an act of sale dated November 29, 1940, whereby plaintiff conveyed to defendant approximately 120 acres of land located in Jefferson Parish. Plaintiff alleges that prior to and during 1940 he was beset by financial difficulties as well as problems concerning the oil and gas potentialities of said property and the ownership of certain royalties, with which problems plaintiff was unfamiliar; that plaintiff was becoming feeble and sick; that defendant, who is plaintiff’s son-in-law, represented himself as being experienced in oil and gas problems and offered to give his assistance and help in solving these problems and protecting the family interest in said property; that defendant represented the only way he could effectively administer said property was by having it placed in his name, for the benefit of plaintiff and his family; that plaintiff finally succumbed to such representations and agreed that the property be placed in defendant’s name for convenience only, with the understanding that same would be returned to plaintiff on demand; that he would never have agreed thereto but for his age, feebleness, infirmity and sickness and the close family relationship existing between plaintiff and defendant; that on or about November 29, 1940 plaintiff was enticed by said fraud and artifice to execute a sale of said property to defendant for a recited cash consideration of $11,800; that there was no consideration whatever for said conveyance and that it did not, and was not intended to constitute a sale and transfer of the property; that notwithstanding his said oral agreement, the defendant has failed and refused to execute the necessary documents to return the ownership of the property to the plaintiff; that plaintiff at no time parted with possession of said property. In the alternative, plaintiff alleges that the said transaction constitutes a donation omnium bonorum, said sale being without consideration and the result thereof being to completely impoverish the plaintiff. In the further alternative, plaintiff alleges that the property was worth in excess of $24,000 and that the sale .is therefore null and void for lesion beyond moiety.
In answer to numerous interrogatories attached to plaintiff’s petition, the defendant responded under oath, that the price of $11,-800 was not handed over to plaintiff at the time of the sale but represented the amount of advances, including an automobile valued at $500, made to plaintiff by defendant beginning in about 1930 and continuing until the time of the sale in November of 1940; that the property was not conveyed to him for convenience; that he made no agreement to reconvey the property to plaintiff; that although he had allowed the plaintiff to live in the residence on the property rent free, defendant had, since *493 said sale, received approximately $7,000 from oil royalties under a lease on the property, received $300 from the sale of one acre of the land in January of 1951, received about $15 for the sale of a right of way in 1942 and finally sold the property on October 27, 1951 to Louisiana Power and Light Company for the sum of $65,845. That in said sale to Louisiana Power and Light Company, defendant reserved for the benefit of plaintiff and his wife the right to continue to occupy the residence with surrounding grounds measuring 200 feet by 400 feet until three months after the death of either plaintiff or his wife.
Plaintiff died on June 5, 1953, before defendant filed an answer. Thereafter plaintiff’s widow, as testamentary executrix, was substituted as the party plaintiff. No effort was made by either side, in the interval between the institution of suit and the death of plaintiff, to obtain and preserve his testimony by deposition or otherwise. After various preliminary pleadings, defendant filed an answer, denying all charges of fraud against him and averring the validity and efficacy of his acquisition. The defenses pleaded included the prescription of four years applicable to lesion and the prescription of ten years applicable to an action of nullity or rescission. Trial on the merits consumed four days, with a substantial time interval between each of two successive trial dates. After submission on oral argument with briefs filed, the trial judge rendered written reasons maintaining the pleas of prescription of four and ten years and dismissing the suit. Substituted plaintiff filed a motion for rehearing on April 18, 1955. This motion remained pending until June 29, 1961, when it was denied. Plaintiff now prosecutes this de-volutive appeal.
We will first consider the plea of prescription of four years applicable to lesion. LSA-C.C. Art. 1876. Inasmuch as the parties to this conveyance, executed and recorded in 1940, were persons of full age, this prescription of four years ran from the date of the conveyance. The district judge was obviously correct in holding that the demand of the plaintiff grounded on lesion was already barred by prescription when this suit was filed in 1952. Succession of Nelson, 224 La. 731, 70 So.2d 665; LSA-C.C. Art. 2595.
Addressing ourselves to the plea of prescription of ten years applicable to the action of nullity or rescission, we find the pertinent article of our Louisiana Civil Code reading as follows:
“Art. 2221. Prescription for action of rescission. In all cases, in which the action of nullity or of rescission of an agreement, is not limited to a shorter period by [a] particular law, that action may be brought within ten years.
“That time commences in case of violence, only from the day on which the violence has ceased; in case of error or deception, from the day on which either was discovered, and for acts executed by married women not authorized, from the day of the dissolution of the marriage or of the separation.
“With regard to acts executed by persons under interdiction, the time commences only from the day that the interdiction is taken off; and with regard to acts executed by minors, only from the day on which they become of age.”
Although the trial judge cited Succession of Nelson, supra, as authority for his judgment sustaining the plea of prescription of ten years, we believe that actually the Nelson case is distinguishable from the instant matter in that the plaintiffs in the Nelson case were forced heirs of the vendor, whereas the plaintiff in the instant case was the vendor himself. Forced heirs have a limited right beyond ten years, under LSA-C.C. Art. 2239, to attack a transfer made by their parents as being a fraudulent simulation. No such exception to LSA-C.C. Art. 2221 exists in favor of a vendor. *494 The controlling' statute in the instant litigation is the above quoted LSA-C.C. Art. 2221.
In an effort to avoid the consequence of said Art. 2221, the plaintiff contends that in cases of deception or fraud, prescription commences to run only from the date of discovery. See Gant v. Palmer, La.App., 10 So.2d 523 and the authorities cited therein. Plaintiff argues that in the present fact situation, Joseph Quinette was deceived by Harold Delhommer’s promise to convey the property back to him on demand, until Delhommer finally conveyed the property to Louisiana Power and Light Company on October 27, 1951, at which time he discovered defendant’s deception. Plaintiff alleges that almost immediately Joseph Quinette instituted the present action on May 27, 1952. Pretermitting the very serious question as to whether such an alleged oral promise to reconvey the property may be proved by parole and even assuming for the sake of argument, that Joseph Quinette was deceived 'by defendant’s oral promise to reconvey the property to him, and that this deception was not discovered until defendant sold the property to Louisiana Power and Light Company in 1951, the only favorable effect which such an assumption could have on plaintiff’s case would be that it is not barred by the prescription of ten years. Plaintiff still would have to prove simulation.
The jurisprudence is well established that when an actual substantial consideration, no matter how inadequate, has been paid by the purchaser in an alleged sale, the transaction is not a simulation. Succession of Nelson, supra; Keller v. Blanchard, 19 La.Ann. 53; Freeman v. Woods, La.App., 1 So.2d 134; Citizens Bank and Trust Company v. Willis, 183 La. 127, 162 So. 822. Plaintiff admits that previous to the date of the sale in 1940, the defendant had loaned to Joseph Quinette at least the sum of $500 to assist in paying off two mortgages and that in addition the defendant gave or loaned to Joseph Quinette in 1933, a Ford automobile worth between $50 and $225. Under the above cited jurisprudence, it is our opinion that this admitted consideration alone is of a sufficiently substantial nature, under the facts of this case, that the sale cannot be voided as a simulation. We therefore deem it unnecessary to discuss the highly conflicting and contradictory evidence contained in this voluminous record as to whether or not any additional amounts were loaned by defendant to Joseph Quinette. However, we do note that three of the five children of Mr. and Mrs. Joseph Quinette, including defendant’s wife, have taken the side of defendant, testifying they were opposed to this suit branding defendant as a liar and a cheat, while two of said five children have testified for the plaintiff.
Plaintiff’s argument that the transaction was a donation omnium bonorum, in contravention of public interest and therefore radically null and imprescriptible, is without merit because the transaction in this case was not a donation. The admitted loan of $500 and the Ford automobile are consideration sufficient that the transaction cannot be held a donation. It was a sale of the type designated as dation en paiement, even if the consideration was inadequate. See Citizens Bank & Trust Company v. Willis, supra; Jones v. Dietrich, La.App., 186 So. 881; Eureka Homestead Society v. Baccich, 190 La. 494, 182 So. 653; Succession of Nelson, supra.
Plaintiff’s final contention is that since the transaction is a dation en paiement, in consideration of alleged antecedent debts extending back over a ten year period to 1930, it must be declared null because there has been no delivery of the thing given in payment, as required by LSA-C.C. Art. 2656 which reads as follows:
“Art. 2656. Delivery essential to a giving in payment. That giving in payment differs from the ordinary contract of sale in this, that the latter is perfect by the mere consent of the parties, even before the delivery, while the *495 giving in payment is made only by delivery.”
Plaintiffs contend that since Mr. Joseph Quinette continued to live in the residence on the property, there was never any actual delivery made to Mr. Delhommer and that since the instrument in question was not an authentic act, the execution and recordation thereof did not constitute delivery of this immovable within the meaning of LSA-C.C. Art. 2479 which reads as follows:
“Art. 2479. Immovables, method of making delivery. The law considers the tradition or delivery of immovables, as always accompanying the public act, which transfers the property. Every obstacle which the seller afterwards interposes to prevent the taking of corporal possession by the buyer, is considered as a trespass.”
Admittedly, the instrument in question here was not an authentic act, executed by the parties before a notary public and two witnesses. The evidence shows that of the three witnesses who signed, only one appeared before the notary. The evidence is in conflict as to whether Mr. Joseph Quinette executed this instrument at his home or in the presence of the notary. In any event, the instrument involved in this case stands as a recorded private act of conveyance and, in our opinion, was sufficient to perfect delivery of the land in question. The above quoted article 2479 provides that delivery of immovables accompanies “the public act” which transfers the property. Although it may be argued from dicta in the case of Shultz v. Morgan, 27 La.Ann. 616 that the term “public act” is synonymous with “authentic act”, the Supreme Court has likewise indicated in dicta, in the case of Brown v. Brown, 30 La.Ann. 966, that such a construction is not correct. In the case of Potts v. Reynolds, 131 La. 421, 59 So. 837, our Supreme Court stated that an act of sale of land under private signature, duly recorded, is interpreted to be in accordance with the provisions of LSA-Civil Code Art. 2479.
As able counsel for the defendant has pointed out, the origin and history of Article 2479 indicates clearly that the term “public act” was not meant to be synonymous with the term “authentic act”. Article 2479 provides as follows:
“The law considers the tradition or delivery of immovables, as always accompanying the public act, which transfers the property. * * * ”
In the Projet du Gouvernement (1800), Book III, Title XI, Article 25 it is stated:
“The tradition of immovables .is accomplished by the act alone which transfers the ownership.” (Emphasis added)
Article 1605 of the Code Napoleon provides as follows:
“The obligation to deliver immov-ables is fulfilled by the seller when he has delivered the keys, if it is a building, or when he has delivered the titles of ownership.” (Emphasis added.)
Article 29 of the Louisiana Civil Code of 1808 provided as follows:
“Tradition or delivery of immovables is made by the * * * delivery of the titles.” (Emphasis added.)
The pertinent language of the present article was incorporated as Article 2455 in the Civil Code of 1825. The redactors of the Code of 1825 substituted the present language without comment. A look at the Code of 1825 illustrates that the redactors entered their comments along with articles which changed the law. It is concluded from the above that the term “public act” is a refinement of the term “delivery of the titles” and is not synonymous with the term “authentic act.”
For reasons assigned the judgment appealed is affirmed. All costs o-f this appeal are assessed against the plaintiff.
Affirmed.