LABORDE, Judge.
Alma O. Fey brought this suit as adminis-tratrix of her mother’s succession seeking collation of gifts and repayment of succession debts. Made defendants were Mary O. and Stanley Gates, Mrs. Fey’s sister and brother-in-law. Both defendants answered, generally denying collation was due and asserting prescription of the succession debt. Through later proceedings, Mrs. Gates further sought: to compel collation of gifts from Mrs. Fey, to offset any amounts she may be compelled to collate by showing that certain gifts received from her mother were intended as onerous or remunerative donations, and to recover $2,305 in currency. Following a trial, the trial judge found Mrs. Gates obliged to collate $49,890.91 and Mrs. Fey obliged to collate $4,545.38; both sums bearing interest from date of judicial demand until paid. Mr. Gates was found to be free from any collation obligation. The trial judge denied both Mrs. Gates’ claim that the gifts received were onerous or remunerative donations and her claim to the $2,305 in currency. The trial judge did not rule on Mrs. Fey’s succession debt claim. All parties appeal.
The salient facts are these: Mary Maude Greenlee Osterland, widow of Andrew John Osterland, died on February 2, 1973, leaving her two daughters, Alma Osterland Fey and Mary Osterland Gates, as heirs. During her lifetime, Mrs. Osterland purchased bonds in favor of her daughters as well as made gifts and loaned money to them. She also loaned money to one of her sons-in-law, Stanley Gates. This appeal focuses primarily on issues resulting from these purchases, gifts, and loans, which issues will be discussed separately in hopes of simplifying them.
At the outset we note that certain trial judge findings, either because they have not been appealed from or because they were stipulated on at the trial level, remain unchanged on appeal. These include the *858 following: Mrs. Fey and Mrs. Gates must collate bonds received from their mother and issued in each of their names individually. Mrs. Gates need not collate $3,000 she withdrew from her mother’s account and used to pay her mother’s debts. Mrs. Gates, by proving she spent $993.98 on debts of her mother, is entitled to a credit in that amount on the total sums she must collate. Mrs. Fey must collate sums of checks received from her mother totaling $4,545.38.
THE GOVERNMENT BONDS WITH A SURVIVORSHIP PROVISION
During her lifetime, Mrs. Osterland purchased U.S. Government Bonds and had them issued jointly in her name and in the name of either Mrs. Fey or Mrs. Gates. These co-owner bonds featured a survivor-ship provision vesting full ownership in the surviving co-owner at the moment of the decedent co-owner’s death.
When Mrs. Osterland died, Mrs. Fey and Mrs. Gates, through the operation of the survivorship provision, became the sole owners of their respective co-owner bonds previously held in joint tenancy with their mother. At the trial level, both sisters sought to compel collation from each other for the value of the bonds each received. The trial judge held that the bonds passed immediately in full ownership to each surviving co-owner in accordance with federal law and without being subject to Louisiana’s law granting certain heirs the right to compel collation from their co-heirs. We affirm that part of the judgment recognizing each daughter as sole owner of the bonds, thus giving effect to federal law. However, for the reasons given below, we reverse that part of the judgment denying the collation claims and hold instead that a parent cannot use survivor bonds to circumvent Louisiana’s established laws granting collation rights to co-heirs coming to their parent’s succession.
We deal first with Alma Fey’s collation claim against Mary Gates for the value of the survivor bonds Mrs. Gates holds in full ownership as surviving co-owner. These bonds total $56,000 and include the following individual bonds:
AMOUNT ISSUE DATE
$25,000 May, 1972
5,000 April, 1972
5,000 July-May 1956
5,000 October, 1959
5,000 July, 1957
10,000 February, 1957
1,000 May, 1956
$56,000 TOTAL
Succession of Guerre, 197 So.2d 738 (La.App. 4th Cir. 1967) writ refused, 250 La. 933, 199 So.2d 926, dealt with an analogous situation. That case involved a father who died leaving his three children as forced heirs. During the father’s lifetime, he purchased a total of 50 U.S. Savings Bonds. Each of these bonds included a survivorship provision in favor of persons other than his forced heirs. The bonds were appraised at $42,779.60. The balance of the father’s estate was $8,941.35 making the total value of his estate $52,507.95. Obviously, the exclusion of the $42,779.60 represented by the survivor bonds in favor of these strangers would greatly reduce the legitime due his forced heirs. Conscious of the United States Supreme Court’s announcements in Free v. Bland, 369 U.S. 663, 82 S.Ct. 1089, 8 L.Ed.2d 180 (1962), and Yiatchos v. Yiatchos, 376 U.S. 306 84 S.Ct. 742, 11 L.Ed.2d 724 (1964), providing that under the federal treasury regulations the surviving co-owners of bonds are entitled to them unless their purchaser committed fraud or breach of trust tantamount to fraud, the court set about to discover whether the father had committed fraud or breach of trust amounting to fraud. It began by reviewing Louisiana’s forced heirship laws. The court found that these laws give a forced heir a constitutionally vested right of inheritance to no less than a fixed minimum portion of his parent’s property, the legitime, and also provide him with a remedy to proceed against donees of his parents seeking reduction of excessive donations which impinge upon his legitime. The court concluded that these were important state laws which would be circumvented by recognizing the strangers as sole owners of the bonds without. allowing an action of reduction. Em *859 phasizing that an act can be wrong without meeting the rigid requirements of fraud, the court held that any attempt by a parent to breach a forced heir’s legitime rights by means of converting his estate into survivor bonds payable to a stranger is a breach of trust tantamount to fraud. The court then allowed the forced heirs to bring their action of reduction against the strangers in order to prevent a parent’s use of survivor bonds as a device to circumvent state law.
We have detailed the facts and holding of Succession of Guerre because we feel it is relevant to the disposition of this case. For example, Louisiana law presumes equality among co-heirs coming to their parent’s succession. Thus, gifts received from the parent, without the parent’s formal expression that they are given as an extra portion, are viewed as advancements which the heir may one day expect to receive from his parent’s succession. This presumption obliges an heir to collate his gifts and provides the co-heirs with a right to compel collation from the heir who seeks to avoid this obligation. We feel these collation laws are important state law. If we recognize Mrs. Gates as owner of these bonds totalling $56,000 without also recognizing Mrs. Fey’s collation claim, we would be allowing the very thing the court in Succession of Guerre sought to avoid, namely, a parent’s use of survivor bonds as a device to circumvent important state law. For these reasons, even though we agree with the trial judge that Mrs. Gates must be recognized as the sole owner of these survivor bonds in order to give effect to federal law, we nevertheless allow Mrs. Fey to seek collation of their sums in order to prevent use of survivor bonds as a device to circumvent important state law.
Next we deal with Mrs. Gates’ collation claim against Mrs. Fey for the value of the survivor bonds Mrs. Fey holds in full ownership as surviving co-owner. These bonds total $25,000. The trial judge found the bonds to be free from collation. Mrs. Gates did not, by way of answer to this appeal, ask us to modify, revise, or reverse the trial judge’s denial of her collation claim. However, relying on Bond v. Commercial Union Assurance Companies, 387 So.2d 617 (1980) we feel the issue is properly before us and we reverse.
The court in the Bond case announced the following principle:
“An appellee is required to answer an appeal only if he desires to have the judgment modified, revised, or reversed in part or unless he demands damages against the appellant.... ”
******
“The party successful at the trial level cannot appeal the judgment to the Court of Appeal.”
Applying this principle to our case, we feel that Mrs. Gates was successful at the trial level. Even though her collation claim against Mrs. Fey concerning the $25,000 in government bonds was denied, she was successful in avoiding Mrs. Fey’s' collation claim concerning the $56,000 of government bonds she received as surviving co-owner. Mrs. Gates as the successful party at the trial level, need not appeal the denial of her $25,000 collation claim against Mrs. Fey in order that this court could hear that claim on appeal in the event her successful judgment was reversed. We conclude that it is just, legal, and proper on the record to decide Mrs. Gates’ collation claim against Mrs. Fey concerning the survivor bonds.
Adopting the same reasoning applied and the same result achieved in our earlier discussion of collation of sums received from survivor bonds, we hold that Mrs. Fey must collate these sums received from her mother as surviving co-owner.
THE CHECKS
During her lifetime, Mrs. Osterland issued several checks in favor of Mrs. Gates. Mrs. Fey sought collation of the sums of these checks totaling $18,884.89. Without articulating why, the trial judge ordered Mrs. Gates to collate these sums. Because he earlier excluded from collation other checks issued in a similar manner, finding that Mrs. Gates used those funds to pay debts of her mother, we assume the trial *860 judge ordered collation here because he was unconvinced of Mrs. Gates’ use of any of these funds to pay her mother’s debts. Without such proof, the checks are considered as gifts subjecting them to collation. For the reasons which follow, we affirm the trial judge’s ruling.
In Succession of Browne, 176 So.2d 217 (La.App.2d Cir. 1965), the court announced that a daughter need not collate funds received from her mother when the daughter proves they were used for her mother’s benefit. To escape collation of these checks then, Mrs. Gates must prove they were used for her mother’s benefit.
We now review the evidence to see whether Mrs. Gates has proved use of these checks for her mother’s benefit. Mrs. Gates shows that after her father’s death, in a very real sense, her mother moved in with the Gates family. She had a bedroom and private bath in their home and she ate most of her meals with them. Yet in spite of these favorable circumstances for proving use of these funds for her mother’s benefit, Mrs. Gates failed to document any of their expenditures. Instead her testimony is filled with repeated assertions that she did not remember for what the funds were used. We contrast this testimony with other testimony which shows that Mr. Oster-land left Mrs. Osterland with sufficient funds to lead a good life and that she did indeed live a good life. She maintained a checking account, opened several savings accounts, purchased several bonds, et cet-era. Added to all of this is Mrs. Gates’ testimony that her mother paid her own way. (Tr.330).
Our review of the record supports the trial judge’s conclusion that the checks were gifts subject to collation.
THE SAYINGS AND LOAN CERTIFICATES
At the trial level, Mrs. Fey asserted a collation claim against Mrs. Gates involving two savings and loan association certificates totaling $20,000. After reviewing somewhat conflicting evidence, the trial judge was satisfied that Mrs. Fey proved these certificates were given to and received by Mrs. Gates and ordered collation. The trial judge was particularly impressed with a Louisiana Gift Tax return showing Mrs. Osterland as donor of these two savings and loan certificates and Mrs. Gates as donee. The trial judge also considered a letter from the Baton Rouge Savings and Loan Association confirming that Mrs. Ost-erland, as original owner, transferred the certificates to Mrs. Gates who was thereafter treated by the association as the new owner entitling her to receipt of the dividend checks.
Our review of the record indicates no manifest error in the trial judge’s ruling concerning these two savings and loan certificates. We affirm.
THE WATER WELL LOAN
Mrs. Fey introduced evidence showing Mrs. Gates borrowed $15,000 from her mother to purchase a water well and has repaid only $5,000. She alleged the unpaid $10,000 balance should be treated as a gift thus obligating Mrs. Gates to collate that sum. The trial judge felt the evidence supported Mrs. Fey’s allegations, noting Mrs. Gates’ failure to prove that any of the remaining balance was paid despite her repeated assertions that they were. The trial judge concluded that if this was a loan originally, it was later treated as a gift by both parties and is subject to collation. We agree.
The rule is well settled in Louisiana that a parent’s gratuitous remission of a debt owed by the child subjects that amount to collation. This is so because in releasing the child’s obligation, the parent has in effect made a donation of the original debt. That donation, made without formally expressing that it was given as an extra portion, subjects it to Louisiana’s collation laws.
We hold the evidence supports the trial judge’s conclusion that the $10,000 debt was remitted thus obligating Mrs. Gates to collate the sum.
*861 INTEREST OR REVENUE
At this point, Mrs. Gates must collate in the sum of $105,890.91 and Mrs. Fey must collate in the sum of $29,545.38. We are now concerned with whether interest or revenue is due on these amounts subject to collation and if so, when do they commence to run? The trial judge felt collation of revenues would be improper because the gifts by Mrs. Osterland to her daughters were made in full ownership. However, he felt both daughters owed interest on these amounts which interest commenced running from date of judicial demand and continued until paid.
Mrs. Fey appeals urging error in the trial judge’s denial of “collation of the income from these checks (which should be legal interest) from the time of transfer until paid.” Mrs. Gates meets her argument with an assertion of no manifest error in the trial judge’s ruling and then in her answer to this appeal, Mrs. Gates asserts that Mrs. Fey is not entitled to any award of interest. In support of her latter assertion, Mrs. Gates cites LSA C.C.P. Art. 1921 which authorizes the court to award interest in the judgment as prayed for. Basing her argument on this article, she contends the trial judge erred in granting interest because Mrs. Fey, in her alternative prayer which was granted, made no judicial demand for interest.
The trial judge was correct in awarding interest. We feel Mrs. Fey’s specific request for “interest from date of decedent’s death until paid at 7% per annum and costs”, even though demanded only in her first prayer, is sufficient when coupled with her final prayer for “full, general, and equitable relief”.
We next consider whether the trial judge erred in awarding interest only from date of judicial demand.
We find no manifest error in the trial judge’s conclusion that Mrs. Osterland transferred property to her daughters in full ownership and his reliance on the Louisiana Supreme Court’s announcement in Clark v. Hedden, 109 La. 147, 33 So. 116 (1902) that no collation is due for revenues of property, the full ownership of which has been donated. For these reasons, the trial judge was correct in awarding interest only from date of judicial demand.
THE GIFTS AS REMUNERATIVE OR ONEROUS DONATIONS
Mrs. Gates sought to offset any amounts she must collate by claiming the gifts from her mother were intended as onerous or remunerative donations for services rendered by the Gates. The trial judge did not accept her argument as there was no proof that the Gates attached any conditions to the services rendered Mrs. Osterland, nor were they rendered with any expectation of being recompensed. For different reasons, we affirm.
While we agree the law allows persons to offset sums they must collate by proving gifts from a parent were made with onerous or remunerative donative intent, we hold Mrs. Gates has failed to prove her mother intended the gifts as either onerous or remunerative donations.
A brief reference to Mrs. Gate’s testimony illustrates her lack of proof. For example, Mrs. Gates testified that she did not think her mother gave her any money for taking care of her:
“Q. Now, dealing with the funds that she [Mrs. Osterland] would have given you, [Mrs. Gates] over and above these that she gave you and you did receive, were those monies given to you in consideration for the services you were rendering to her?
A. I don’t think so. I didn’t know whether she did or not.
Q. Why would she give you money then?
A. I don’t think she gave me any money for taking care of her (Tr .329-330)
Placing great emphasis on Mrs. Gates’ own admitted doubt of her mother’s intent to make an onerous or remunerative donation for services rendered, Mrs. Gates failed to prove any onerous or remunerative *862 donations entitling her to offset amounts she must collate.
Mrs. Gates’ failure of proof distinguishes her case from the cases she cites in support of her argument, thus rendering them irrelevant to the disposition of this case.
THE COLLATION CLAIM AGAINST STANLEY GATES
At the trial level, Mrs. Fey sought to compel collation of sums from Stanley Gates. The sums are reflected in five checks issued by Mrs. Osterland and payable to Stanley Gates or to Gates, Inc. These checks include the following:
CHECK DATE
AMOUNT PAYEE ISSUED
$10,000.00 Gates, Inc. 11/14/56
10,000.00 Gates, Inc. 11/28/56
1,353.31 Stanley Gates 11/14/57
8,646.69 Stanley Gates 11/14/58
2,000.00 Gates, Inc. 06/30/60
Citing Succession of Browne, 176 So.2d 217 (La.App. 2nd Cir. 1965) and Succession of Nelson v. Wiegand, 224 La. 731, 70 So.2d 665 (1953), the trial judge denied Mrs. Fey’s collation claim against Mr. Gates.
Each of the cases cited by the trial judge involved collation claims asserted against a son-in-law. In both cases, the court denied the collation claims reasoning that collation is due only by descendant heirs and that since a son-in-law is not a descendant heir, he could not be made to collate. This same reasoning applies to Stanley Gates. Finding no manifest error, we affirm.
THE SUCCESSION DEBT CLAIM
Mrs. Fey sought recovery of a $20,000 debt she claimed Stanley Gates owed Mrs. Osterland and now owes her succession. This $20,000 debt is represented by two of the same checks listed above in our discussion of Mrs. Fey’s collation claim against Stanley Gates. Each check is for $10,000. One was issued on November 14, 1956, and one on November 28,1956. The trial judge found this to be a succession debt not at issue in a suit for collation. Consequently, he did not rule on this claim. We reverse. For the reasons stated below, we feel recovery of this $20,000 debt is properly at issue. However, because we find the debt has prescribed, we deny recovery.
Our first concern is whether recovery of this debt is at issue. Louisiana Code of Civil Procedure Article 2971 provides that except as otherwise provided by law, the rules of pleading applicable in ordinary proceedings apply to succession proceedings. Applying these rules, we find recovery of the $20,000 debt was placed at issue when Mrs. Fey, in paragraph 6 of her petition alleged that Mr. Gates obtained loans from Mrs. Osterland totaling $20,000, which loans were never repaid and Mr. Gates, in paragraph 6 of his answer, replied that any unpaid loans once owing to Mrs. Osterland were now prescribed. We feel these pleadings suffice to place collection of the $20,-000 debt properly at issue.
We now determine whether the claim for $20,000 is prescribed. Louisiana Civil Code Article 3538 provides that actions for payment of money lent prescribe in three years, unless the debt has been acknowledged in writing. If acknowledged, prescription is interrupted. Application of this code article to our facts leads to the conclusion that the loans in 1956 have long prescribed unless Mr. Gates has accomplished a written acknowledgment sufficient to interrupt prescription.
Mrs. Fey seeks to prove an acknowledgment by offering evidence of a bookkeeping entry documenting this debt. The circumstances surrounding this entry indicate that Mr. Gates entered the debt in his books in 1956 as an original bookkeeping entry. We hold that these circumstances fail to support the type of acknowledgment necessary to interrupt prescription. Instead, we view the entry as nothing more than a mere notation of a debt. It is directed to no one in particular and is made without any promise of Mr. Gates to pay it. Nor does it contain Mr. Gates’ signature.
Since the bookkeeping entry fails to accomplish a written acknowledgment, it also fails to interrupt prescription. See Wooden *863 v. Hartford Insurance Company, 335 So.2d 742 (La.App. 2nd Cir. 1976) rehearing denied. Without an effective acknowledgment, the $20,000 debt has prescribed and is no longer collectable.
MARY GATES’ CLAIM TO $2,305
In paragraph 3 of her Opposition to Tableau of Distribution, Mrs. Gates contends that pursuant to a court order issued in her father’s succession, the sum of $2,305 in gold and silver certificates located in safe deposit box #388 in the Calcasieu Marine National Bank in Oakdale, Louisiana, was ordered removed from that box and delivered to her. Claiming this currency was never delivered to her and was instead removed by Alma Fey who still has it in her possession, Mrs. Gates prayed that she be recognized as owner of the $2,305 and that Alma Fey be ordered to deliver the sum to her. (Tr.166; 170) The trial judge denied Mrs. Gates’ claim finding the evidence insufficient to support it. For different reasons given below, we affirm.
At the trial level, Mrs. Gates’ counsel in his presentation of her opposition stated:
“... Your Honor, the Gates would like to amend their opposition to the tableau to delete paragraphs one, two, three, four, five, six, seven.... ” (Tr.357)
By deleting the very paragraph which set forth this claim to $2,305, we feel Mrs. Gates had forfeited any rights she may have had to recover the sum. For these reasons, we affirm the trial judge’s denial of Mrs. Gates’ claim to $2,305.
ADDITIONAL ATTORNEY’S FEES
On appeal, counsel for Mrs. Fey asks this court to increase the award of $9,973.07 in attorney’s fees granted at the trial level by an additional $9,973.07. The trial judge refused to award the additional attorney’s fees for handling the succession. We agree with the trial judge’s reasoning as well as with his result, and adopt, as our own, the following part of his opinion:
“The Court will not award additional attorney fees for handling the succession. While the Court does not doubt that attorneys for Alma O. Fey have earned such additional sums, the Court believes that this would exceed reasonable compensation. The cases cited by attorneys for Mary O. Gates (Gilmore, Daste, Benson, etc.) convince the Court that the previous amount awarded ($9,973.07) was a high award and should not be increased.”
“Another reason is that the attorneys expended much of their time and effort in an adversary proceeding in which their client, Alma O. Fey, was attempting to obtain a larger share of the succession assets by forcing her co-heir and sister, Mary O. Gates, to collate. This is contrasted with the usual administrative duties of the attorney handling a succession. It seems fair to the Court that Alma O. Fey should pay some of these attorney fees just as Mary O. Gates has paid or will pay for all legal services rendered in her behalf.”
Based on the above reasoning, we affirm the award of $9,973.00 to Mrs. Fey’s attorneys for handling the succession matters. An award of additional attorney’s fees is unwarranted.
DECREE
Accordingly, for the above reasons, the judgment of the trial court is reversed insofar as it failed to order collation of gifts received as surviving co-owner of U.S. Savings Bonds and it is ordered, adjudged and decreed that Mary O. Gates collate the sum of $56,000 representing her gift of U.S. Savings Bonds and that Alma 0. Fey collate the sum of $25,000 representing her gift of U.S. Savings Bonds. In addition, it is ordered, adjudged and decreed that the succession debt is prescribed. In all other respects, the judgment of the trial court is affirmed. Costs of the appeal are assessed one-half against Mary O. Gates and one-half against the Succession.
REVERSED IN PART; AFFIRMED IN PART; AND RENDERED.